**NOT FOR PUBLICATION WITHOUT THE**
**APPROVAL OF THE APPELLATE DIVISION**

This opinion shall not "constitute precedent or be binding upon any court."
Although it is posted on the internet, this opinion is binding only on the
parties in the case and its use in other cases is limited. R. 1:36-3.

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO. A-3992-16T2

VINCENZO GALLINA and
MARIA GALLINA,

    Plaintiffs-Appellants,

v.

ADRENALINE FAMILY ENTERTAINMENT,
INC., CLEMENTON LAKE OPERATIONS,
LLC, CLEMENTON LAKE MANAGEMENT,
LLC, CLEMENTON LAKE HOLDINGS, LLC,
CLEMENTON LAND, LLC, and
BOB'S SPACE RACERS, INC.,

    Defendants-Respondents.

_____

Argued April 12, 2018 — Decided June 6, 2018

Before Judges Rothstadt and Gooden Brown.

On appeal from Superior Court of New Jersey,
Law Division, Camden County, Docket No. L-
2764-12.

Michael Confusione argued the cause for
appellants (Hegge & Confusione, LLC,
attorneys; Michael Confusione, of counsel
and on the brief).

Charles C. Daley, Jr., argued the cause for
respondents Adrenaline Family Entertainment
and Clementon Lake (Barnaba & Marconi, LLP,

attorneys; Dennis M. Marconi and Tyler L. Williams, on the brief).

Law Office of Peter A. Callahan, attorneys for respondent Bob's Space Racers, Inc., join in the brief of respondents Adrenaline Family Entertainment and Clementon Lake.

PER CURIAM

Plaintiffs, Vincenzo Gallina and his wife Maria Gallina, appeal from the Law Division's April 28, 2017 order denying their motion to reinstate their complaint against defendants, Adrenaline Family Entertainment, Inc., Clementon Lake Operations, LLC, Clementon Lake Management, LLC, Clementon Lake Holdings, LLC, Clementon Land, LLC and Bob's Space Racers, Inc. The complaint sought damages for injuries sustained by Vincenzo[1] on an amusement attraction, allegedly due to defendants' negligence in their ownership or operation of the ride or park at which the attraction was available to the public.

After plaintiffs filed suit, the parties participated in an arbitration of plaintiffs' claims that resulted in a "no cause" determination and the dismissal of their complaint. Plaintiffs then filed a motion to reinstate their complaint, arguing that they did not agree to waive their right to a trial in court

---

[1] We refer to plaintiffs by their first names to avoid any confusion caused by their common last name. No disrespect is intended.

2                                              A-3992-16T2

before a judge or jury, despite their participation in the arbitration. The motion judge denied the application without a hearing, finding that, like a party who agreed to a bench trial and after an unsatisfactory verdict demanded a new trial by jury, plaintiffs were bound by the result of the arbitration because they participated in it, without objection.

On appeal, plaintiffs contend that the motion judge should have conducted an evidentiary hearing before deciding whether the agreement to arbitrate bound them in light of their claim that they did not know they were waiving their right to a trial. For the reasons that follow, we vacate the order and remand for a hearing.

The facts derived from the motion record are summarized as follows. Vincenzo sustained injuries at Clementon Park when he fell off of "The Ladder Climbing Rope" attraction. After plaintiffs filed their complaint, the parties engaged in discovery including depositions. Later, according to Vincenzo, his attorney, Daniel B. Zonies, "told [him] we have to go to arbitration," which the lawyer explained was being "in one room with an arbitrator or retired judge" where "lawyers [and the arbitrator] were going to ask [him] questions . . . ."

It was undisputed that plaintiffs never signed any agreement to arbitrate. The only document indicating that there

3                                                          A-3992-16T2

would be arbitration was the arbitrator's retainer letter that stated counsel "agreed to retain [the arbitrator] to conduct a binding arbitration . . . ." After setting forth the details about the location, cost, timing for a decision and payment by counsel, the letter concluded with a statement signed by counsel that read "We agree to the terms and conditions set forth above and understand that this agreement is made between and among the [a]rbitrator and the attorneys and not the [a]rbitrator and the parties."

Although there was no written agreement, Clementon Park's attorney, Kathi Peisner, certified that "[c]ounsel for all parties entered into a binding [a]rbitration [a]greement[.]" Additionally, counsel stated that many letters were exchanged "between and among counsel and [the arbitrator.]" Counsel averred, "[t]here [could] be NO doubt that plaintiffs' original attorney knew the arbitration was binding."

Vincenzo claimed that he "never personally understood that [he was giving] up [his] right to go before judges or [a] jury[.]" Maria, too, asserted that Zonies never told her that she was giving up her rights by going to arbitration.

Before the arbitration, counsel for the parties made submissions to the arbitrator. Plaintiffs and the parties' attorneys appeared for the arbitration on September 28, 2016 and

December 21, 2016. According to Peisner, on the first day of the arbitration hearing, "plaintiffs appeared with their attorney, . . . an interpreter, and [their] relatives[,]" and the arbitrator explained "to all that the arbitration was on consent and binding." Further, the arbitrator asked "plaintiffs through their counsel if they knew that arbitration was INSTEAD of a trial and that he would be deciding the case instead of a jury, and if they were ready to proceed." Peisner stated, "[p]laintiffs expressed an understanding, and consent, and their attorney stated that plaintiffs understood the consequences."

On January 4, 2017, the arbitrator entered an award in favor of defendants, finding no cause for the action. A week later, Zonies advised Vincenzo that "the arbitrator ruled against [him,] and that [he] was not going to receive any damages for [his] injuries," or be able to "continue with [his] claims in court . . . ." Vincenzo asserted that he was "shocked" as he "never agreed to such an arrangement[,]" or to "give up [his] right to [his] court case."

After plaintiffs filed their motion to reinstate and the parties made written submissions, the motion judge considered counsels' oral argument on April 28, 2017, and denied plaintiffs' motion without a plenary hearing. In an oral

decision placed on the record on that date, the judge explained why he believed an evidentiary hearing was not necessary.

In his decision, the judge stated that if he ordered a hearing he would "have to assume that [he] might actually believe the plaintiff[s] and believe that they truly didn't think they were waiving anything, Zonies didn't explain it to them[,] and they had no idea as to what was going on." Regardless of his beliefs about the plaintiffs' assertions, the judge concluded that Zonies' agreement to arbitrate bound plaintiffs to the same agreement. The judge stated that if he questioned whether plaintiffs understood the agreement, it would "substantially undercut[] the efficient working of the [c]ourt system where when the attorney, on behalf of the client signs a document agreeing to go to binding arbitration, it's enforced."

While the judge was satisfied that at a hearing, if the arbitrator testified in accordance with the facts stated in Peisner's certification, plaintiffs would lose, the judge made clear that his ruling was not based upon whether the arbitrator explained to plaintiffs anything about the arbitration before it began, but rather, upon his finding that the situation was similar to a litigant who was not happy with a result after a bench trial. The judge explained:

> The important thing here is that unlike the settlement that was not authorized, [where] a plaintiff who won't sign a release, it's a different plaintiff than a plaintiff that proceeded to binding arbitration, lost and now wants their case heard before a jury. Those are apples and oranges.
>
> And I think this case is closer to the . . . bench trial situation . . . because no plaintiff could plausibly say in [c]ourt when their case is tried before a judge, gee, I thought we were [going to] get another trial a year later before a jury.

The motion judge ultimately found that to allow a dissatisfied plaintiff to raise an objection to the arbitration after it was completed would cause havoc in litigation. He stated that at a hearing, "if I believe the plaintiffs and said basically their no-cause at binding arbitration is worthless, is meaningless, that [would be] the precedent I don't want to establish." This appeal followed.

A trial court confronted with a motion to reinstate a complaint must determine whether good cause has been shown warranting that the "order dismissing [the] matter . . . be set aside and the case restored[.]" ASHI-GTO Assocs. v. Irvington Pediatrics, PA, 414 N.J. Super. 351, 359 (App. Div. 2010). "Whether to grant or deny a motion to reinstate a complaint lies within the sound discretion of the trial court." Sullivan v. Coverings & Installation, Inc., 403 N.J. Super. 86, 93 (App.

Div. 2008). "We will 'decline to interfere with [such] matters of discretion unless it appears that an injustice has been done.'" Ibid. (quoting Cooper v. Consol. Rail Corp., 391 N.J. Super. 17, 23 (App. Div. 2007)). While the "'abuse of discretion' standard defies precise definition," we may find an abuse of discretion "when a decision is 'made without a rational explanation, . . . rest[s] on an impermissible basis[,]'" or was "an arbitrary, capricious, whimsical, or manifestly unreasonable judgment." Flagg v. Essex Cty. Prosecutor, 171 N.J. 561, 571 (2002) (citations omitted).

To the extent the trial court's decision involves, as here, a decision regarding the validity of an arbitration agreement, our review is de novo. Atalese v. U.S. Legal Servs. Grp., 219 N.J. 430, 445-46 (2014).

Applying these standards, we conclude that it was a mistaken exercise of the judge's discretion to decide plaintiff's motion without a plenary hearing in light of the conflicting certifications presented to the judge concerning plaintiffs' alleged agreement to waive their right to a trial in court.

At the outset, we acknowledge that our State's public policy favors the resolution of disputes through arbitration. Id. at 440. The strong "public policy of this State favors

arbitration as a means of settling disputes that otherwise would be litigated in a court." Badiali v. N.J. Mfrs. Ins. Grp., 220 N.J. 544, 556 (2015). The preference for arbitration is not without limits. Atalese, 219 N.J. at 441. For example, "[a]n agreement to arbitrate, like any other contract, 'must be the product of mutual assent, as determined under customary principles of contract law.'" Id. at 442 (citation omitted). "Mutual assent requires that the parties have an understanding of the terms to which they have agreed." Ibid.

"Our state-law jurisprudence makes clear 'that when a contract contains a waiver of rights - whether in an arbitration or other clause - the waiver "must be clearly and unmistakably established."'" Morgan v. Sanford Brown Inst., 225 N.J. 289, 308-09 (2016) (quoting Atalese, 219 N.J. at 444). When the agreement is written, "[n]o magical language is required to accomplish a waiver of rights in an arbitration agreement." Id. at 309. Because arbitration involves a waiver of the right to pursue a case in a judicial forum, courts take particular care "in assuring the knowing assent of both parties to arbitrate, and a clear mutual understanding of the ramifications of that assent." NAACP of Camden Cty. E. v. Foulke Mgmt. Corp., 421 N.J. Super. 404, 425 (App. Div. 2011), appeal dismissed, 213 N.J. 47 (2013).

"This requirement of a 'consensual understanding' about the rights of access to the courts that are waived in the agreement has led our courts to hold that clarity is required." Moore v. Woman to Woman Obstetrics & Gynecology, LLC, 416 N.J. Super. 30, 37 (App. Div. 2010) (citation omitted). "By its very nature, an agreement to arbitrate involves a waiver of a party's right to have her claims and defenses litigated in court." Atalese, 219 N.J. at 442 (citation omitted). Any contractual waiver-of-rights provision must reflect that the party has agreed "clearly and unambiguously" to its terms. Leodori v. Cigna Corp., 175 N.J. 293, 302 (2003), cert. denied, 540 U.S. 938 (2003). "[A]n average member of the public may not know — without some explanatory comment — that arbitration is a substitute for the right to have one's claim adjudicated in a court of law." Atalese, 219 N.J. at 442.

The need for clarity about the rights being waived in an arbitration agreement does not mean that it must be in writing. An agreement to arbitrate in lieu of litigation "do[es] not need to be in writing to be enforceable." Leodori, 175 N.J. at 305 (addressing an employee's agreement to arbitrate absent a written agreement with his employer). There must be, however, evidence that "otherwise explicitly indicate his or her agreement to" arbitrate, id. at 306, including "some other

unmistakable indication that [a litigant] affirmatively had agreed to arbitrate his claims," id. at 307, and waived his right to trial, Atalese, 219 N.J. at 442.

Here, the only evidence of plaintiffs' decision to waive their right to a trial that was presented to the motion judge was the undisputed fact that the parties participated in the arbitration and their conflicting certifications. Plaintiffs contended they did not understand that participating in the arbitration meant there would be no trial. Peisner's certification relied upon her hearsay statement about what the arbitrator allegedly explained to plaintiffs and her unqualified conclusion that plaintiffs understood what they were told. In addition, the one written agreement presented to the court — the arbitrator's retainer agreement was signed only by counsel, and did not mention a waiver of plaintiffs' right to trial. There was no certification from the arbitrator explaining what he said to plaintiffs or even from their former attorney refuting Vincenzo's description of what he was told. And, there was no certification from the interpreter who assisted at the arbitration.

While we share the motion judge's concern about the need for courts to be able to rely on counsels' agreement to arbitrate, and the impact upon litigation of allowing

11

dissatisfied litigants to reopen cases after they participated in an arbitration that does not go well for them, we believe under the unique circumstances of this case, that there was insufficient evidence for the motion judge to have decided the issue presented, without a hearing. See Lederman v. Prudential Life Ins. Co. of Am., Inc., 385 N.J. Super. 324, 347 (App. Div. 2006).

The order under review is vacated and the matter remanded for a plenary hearing as to whether plaintiffs knowingly waived their right to trial by a judge or jury.

Vacated and remanded for further proceedings consistent with this opinion. We do not retain jurisdiction.

I hereby certify that the foregoing is a true copy of the original on file in my office.

CLERK OF THE APPELLATE DIVISION

A-3992-16T2