**NOT FOR PUBLICATION WITHOUT THE**
**APPROVAL OF THE APPELLATE DIVISION**

This opinion shall not "constitute precedent or be binding upon any court." Although it is posted on the internet, this opinion is binding only on the parties in the case and its use in other cases is limited. R. 1:36-3.

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO. A-4749-18T3

JANET STAMATO,

     Plaintiff-Appellant,

v.

MORGAN STANLEY SMITH
BARNEY, LLC,

     Defendant-Respondent,

and

JOHN CAMPBELL, MAURICE
DAVIS, KATHERINE S. FESTA,
and JOSEPH VACCARO,

     Defendants.

_____

          Argued January 14, 2020 – Decided February 13, 2020

          Before Judges Hoffman and Currier.

          On appeal from the Superior Court of New Jersey, Law
          Division, Essex County, Docket No. L-8890-18.

Laura Marie Lo Giudice argued the cause for appellant (Green Savits LLC, attorneys; Laura Marie Lo Giudice, of counsel and on the briefs).

Tracy L. Gerber (Greenberg Traurig LLP) of the Florida bar, admitted pro hac vice, argued the cause for respondent (Greenberg Traurig LLP, attorneys; Kristine J. Feher, on the brief).

PER CURIAM

In this action asserting employment-related claims based on alleged violations of the New Jersey Law Against Discrimination (LAD),[1] plaintiff appeals from the Law Division order granting defendants' motion to stay the action and compel arbitration. We affirm.

## I.

We derive the following facts from the record. Plaintiff has worked in the financial industry for more than thirty years. She began her employment with Morgan Stanley Smith Barney, LLC (Morgan Stanley) as a senior vice president and financial advisor in March of 2009.

A. <u>March 2009 Employment Agreement</u>

---

[1] N.J.S.A. 10:5-1 to -49.

On March 19, 2009, plaintiff executed a document titled "Financial Advisor Employment Agreement" (the Employment Agreement), which contained the following provision relating to arbitration:

> 7.1 Any controversy or claim arising out of or relating to (i) your employment by Morgan Stanley (excluding statutory employment claims and other claims covered by Paragraph 7.2), or (ii) this Agreement (or its breach), will be settled by arbitration before either the National Association of Securities Dealers, Inc. ("NASD") or the New York Stock Exchange, Inc. ("NYSE") in accordance with their respective rules….

Paragraph 7.1 specifically excluded statutory employment claims, which it stated are covered in paragraph 7.2. That paragraph, set forth below, does not mention arbitration or a waiver of the right to litigate claims in court with a jury; instead, it references only Morgan Stanley's internal alternative dispute program:

> 7.2 Notwithstanding the arbitration requirement of paragraph 7.1 above, you agree that certain other claims (including, but not limited to, statutory discrimination and other statutory employment claims) must be submitted to Morgan Stanley's Alternate Dispute Resolution Program, "Convenient Access to Resolutions for Employees" ("CARE"). Claims required to be submitted to CARE are recited in the CARE Guidebook maintained by the CARE Program Administrator's Office and in the CARE Program explanatory brochure.

3

According to plaintiff, she never received the CARE Guidebook or explanatory brochure, either before or after she executed the Employment Agreement. The CARE Guidebook in effect in 2009 did not require plaintiff to waive her right to litigate her employment claims in court, but merely provided arbitration as an option, if Morgan Stanley agreed. The CARE Guidebook also stated,

> CARE creates more options for resolving your employment-related issues, but it does not create a contract with you or establish any of the terms of your employment. . . .
>
> Upon notice, the terms of CARE may change or be discontinued. Any material changes made to CARE will be announced in advance of their effective dates and will then become equally binding upon you and the Firm.

In 2015, Morgan Stanley announced its expansion of the CARE program to compel mandatory arbitration for all covered claims. Employees received an email announcing the change – the email included links to the CARE Arbitration Agreement, an updated CARE guidebook describing the expanded arbitration program, and a "CARE Arbitration Program Opt-Out Form." The record indicates plaintiff received the email titled "Expansion of CARE Arbitration Program," containing the announcement and document links, on September 2, 2015. Plaintiff certified "hav[ing] no recollection of receiving" this email or

4

"follow[ing] any of the links to open either the Arbitration Agreement or [the] Opt-Out form."

The five-paragraph email explained that, effective October 2, 2015, arbitration under the new "CARE Arbitration Program" would be "mandatory for all employees" unless an employee individually chose to opt out:

> Morgan Stanley is announcing the expansion of CARE . . . to extend arbitration obligation for all US employees-registered and non-registered. Effective October 2, 2015, arbitration under the CARE Arbitration Program will be mandatory for all employees . . . and all covered claims between the firm and employees will be resolved through final and binding arbitration on a non-class, non-collective and nonrepresentative action basis as more fully described in the Arbitration Agreement and CARE Guidebook.

The email advised employees to review the CARE Arbitration Agreement and the CARE guidebook.

Under the heading "Next Steps," the email stated,

> By continuing your employment with Morgan Stanley, you accept and agree to, and will be covered and bound by the terms of the Arbitration Agreement and the Arbitration Provisions in the CARE Guidebook, unless you opt out of the Care Arbitration Program by completing, signing and returning an effective CARE Arbitration Opt-Out Form by October 2, 2015. . . . If you remain employed and do not timely complete, sign and submit an effective CARE Arbitration Program Opt-Out Form, . . . you have consented and agreed to

the terms of the Arbitration Agreement and the arbitration provisions of the CARE Guidebook.

Plaintiff did not opt-out of the CARE Arbitration Agreement during the opt-out window. Regarding her lack of recollection of receiving the September 2, 2015 email, plaintiff explained she received "multiple emails every day from different departments providing information concerning different programs or opportunities," and that she paid little attention to them "because they simply did not impact [her] job responsibilities."

B. March 2015 Growth Bonus Award

Throughout the course of her employment at Morgan Stanley, plaintiff was eligible for various bonuses and awards based on her performance. To receive these bonuses and awards, Morgan Stanley required plaintiff to execute agreements setting forth the terms for her receipt of the bonuses and the terms that would apply to her upon acceptance. The Bonus Agreement obligated Morgan Stanley to make the bonus payment to plaintiff "within fifteen business days following March 15, 2016" (with subsequent bonuses to be paid annually until 2020), provided that plaintiff remained an employee in good standing at Morgan Stanley on the payment dates, and subject to the terms of the Bonus Agreement. Pursuant to the Bonus Agreement, plaintiff received bonus

payments of nearly $32,000: $10,786.97 in March 2016; $10,639.26 in March 2017; and $10,491.54 in March 2018.

The Bonus Agreement included a detailed arbitration provision setting forth the terms of mandatory arbitration, and the venue and the types of claims subject to arbitration, expressly including statutory discrimination claims. The arbitration provision stood out because it had its own heading: "Arbitration Agreement," at the top of page four of the Bonus Agreement; significantly, no other paragraphs contained headings. The arbitration provision stated, in relevant part,

> Any controversy or claim . . . based on, arising out of, or which arose out of or in any way relate to [e]mployee's employment, compensation, and terms and conditions of employment with Morgan Stanley… including, but not limited to . . . statutory discrimination, harassment and retaliation claims, and claims under, based on, or relating to any federal, state or local . . . statute . . . and any other . . . discrimination or employment law . . . will be resolved by final and binding arbitration . . . .

Plaintiff executed the Bonus Agreement on March 31, 2015. Plaintiff implied she signed the agreement without reading it, as she "assumed . . . the document related only to the bonus [she] was receiving, [as she] had no reason to even suspect [it] contained agreements related to [her] entire employment relationship with Morgan Stanley."

A-4749-18T3

In 2018, plaintiff voluntarily resigned from Morgan Stanley.  On December 17, 2018, plaintiff filed a four-count complaint against defendants, Morgan Stanley and four of its executives, asserting LAD claims of age and gender discrimination, hostile work environment based on age and gender discrimination, aiding and abetting discrimination, and constructive discharge.  On March 18, 2019, defendants filed a motion "to stay the action . . . and to compel arbitration of [p]laintiff's claims."

Following oral argument, the court granted defendants' motion, concluding that plaintiff entered into a binding agreement which required her to arbitrate her claims against Morgan Stanley.  The court considered plaintiff a "sophisticated party" who "is in [the] financial transactions business that deals with due diligence involving different types of commercial agreements . . . ."  The court concluded the CARE Arbitration Agreement clearly expressed the rights of the parties.

Regarding plaintiff's contention that the 2015 opt-out agreement failed to provide adequate consideration and that it lacked her affirmative assent, the motion court concluded that Jaworski v. Ernst and Young U.S. LLP, 441 N.J. Super. 446 (App. Div. 2015) was dispositive of the arguments presented, finding the facts and issues analogous.  The court found plaintiff, like the employees in

8

Jaworski, manifested her assent to be bound to the arbitration agreement by continuing her employment upon receipt of the revised agreement and failing to opt-out.

The motion court also found that the Bonus Agreement was "clear and explicit as to the arbitration" provision and "it's clear that they entered into an agreement by acceptance of that bonus award that they also accept to be bound by the terms and agreement of that award contract. . . . "The court therefore concluded that both the revised CARE Arbitration Agreement and Bonus Award Agreement required the arbitration of plaintiff's claims against defendants.

On June 17, 2019, the motion court issued an order compelling arbitration and staying the action pending resolution of any subsequent arbitration. Plaintiff now appeals, arguing the motion court erroneously concluded the mandatory arbitration provisions of the CARE Arbitration Agreement and the Bonus Award Agreement are enforceable against her.

II.

We apply a de novo standard of review when reviewing a motion judge's determination of the enforceability of a contract. Goffe v. Foulke Mgmt. Corp., 238 N.J. 191, 207, 208 (2019). When reviewing arbitration clauses within contracts, "the enforceability of arbitration provisions is a question of law;

therefore, it is one to which we need not give deference to the analysis by the trial court."  Ibid.

We begin by recognizing the Federal and New Jersey Arbitration Acts express a general policy favoring arbitration.  Atalese v. U.S. Legal Services Group, L.P., 219 N.J. 430, 440 (2014); see also 9 U.S.C. §§ 1 to 16; N.J.S.A. 2A:23B-1 to -32.  "The public policy of this State favors arbitration as a means of settling disputes that otherwise would be litigated in a court."  Badiali v. N.J. Mfrs. Ins. Grp., 220 N.J. 544, 556 (2015).  Although enforcement is generally favored, it "does not mean that every arbitration clause, however phrased, will be enforceable."  Atalese, 219 N.J. at 441.

A valid arbitration clause "must state its purpose clearly and unambiguously."  Id. at 435.  Further, an arbitration agreement "must be the product of mutual assent," which "requires that the parties have an understanding of the terms to which they have agreed."  Id. at 442 (quoting NAACP of Camden Cty. E. v. Foulke Mgmt., 421 N.J. Super. 404, 424 (App. Div. 2011)).  Our Supreme Court clearly set forth that a party "cannot be required to arbitrate when it cannot fairly be ascertained from the contract's language that [he or] she knowingly assented to the provision's terms or knew that arbitration was the exclusive forum for dispute resolution."  Kernahan v.

Home Warranty Adm'r of Fla., Inc., 236 N.J. 301, 322 (2019). The "critical inquiry" is whether an employee "surrendered [his or her] statutory rights knowingly and voluntarily." Leodori v. Cigna Corp., 175 N.J. 293, 305 (2003).

In her brief, plaintiff's primary contention is that the motion court mistakenly relied on Jaworski in reaching its conclusion to compel arbitration. Instead, plaintiff urges us to follow Skuse v. Pfizer, Inc., 457 N.J. Super. 539, 550 (App. Div.) cert. granted 238 N.J. 374 (2019), which recognized, in the "important context of an employer soliciting a waiver of an employee's statutory rights," the critical importance that such communications substantiate "an employee's 'explicit, affirmative agreement that unmistakably reflects the employee's assent' to a binding arbitration policy." (emphasis in original) (quoting Leodori, 175 N.J. 293, 303 (2003)).

In Skuse, Pfizer, the employer, disseminated a mandatory arbitration policy and class waiver agreement to its employees through an email, as a training module presenting the company's policy. Id. at 545. The email linked the employees to the company's computer-based training portal, the same portal employees used for all their assigned trainings. Id. at 546. The training module consisted of four slides that presented an overview of the company's new arbitration policy; however, the arbitration agreement was included in a separate

link and not displayed in the module. Id. at 546-47. One of the slides informed employees the agreement was a mandatory condition of their employment and that they would be deemed to have assented to the policy by continuing to work for sixty days after being presented the agreement, despite failing to click "acknowledge." Ibid. Employees agreed to the arbitration agreement by checking a box which read "CLICK HERE to acknowledge." Id. at 548.

The trial court in Skuse relied on Jaworski and concluded the employee's claims were subject to arbitration because the sixty-day waiver was legally sufficient to manifest the employee's assent. Id. at 561-62. However, a different panel of this court decided Skuse and declined to follow Jaworski; instead the court reversed, holding that Pfizer's unilateral action of binding its employees to arbitrate all claims, by acknowledging or ignoring a brief presentation summarizing the agreement, did not constitute the "explicit, affirmative agreement that unmistakably reflects [an] employee's assent" to arbitration. Id. at 563 (quoting Leodori, 175 N.J. at 303).

In ruling that Morgan Stanley's revised Care Arbitration Agreement and accompanying emails became enforceable against plaintiff based upon her continued employment with Morgan Stanley and her failure to opt-out, the motion court

focused only on Jaworski, without consideration of Skuse. In addition, the court did not address the paragraph of the Employment Agreement that stated, "This Agreement may be amended only by a writing signed by both [plaintiff] and Morgan Stanley." While the motion court's analysis did not convince us that the facts and circumstances warranted the application of Jaworski to impose the terms of the revised CARE Arbitration Agreement upon plaintiff, we conclude the motion court correctly ruled that plaintiff is subject to the terms of the Bonus Award Agreement she signed.

We reject plaintiff's argument that the motion court should have allowed her to avoid the clearly worded mandatory arbitration provision contained in the Bonus Award Agreement based upon her incorrect assumption that "the document related only to the bonus [she] was receiving." The Bonus Award Agreement consisted of eleven pages containing sixteen numbered paragraphs, with only numbered paragraph 7 set apart with a separate heading, as follows:

7. Arbitration Agreement

That same paragraph included eight sub-paragraphs and was the only paragraph that contained sub-paragraphs. Most significantly, the Bonus Award Agreement required a signature from plaintiff.

 A-4749-18T3

We conclude this signature requirement – at the end of an agreement containing a clearly worded mandatory arbitration provision – satisfies the mandate "for an 'explicit, affirmative agreement that unmistakably reflects [an] employee's assent' to arbitration, and 'concrete proof' of a waiver of an employee's rights to a jury trial and to litigate discrimination claims in court." Skuse, 457 N.J. Super. at 563 (quoting Leodori, 175 N.J. at 303 and 307).

We therefore affirm the Law Division order under review based upon the Bonus Award Agreement signed by plaintiff. Because plaintiff's agreement to the terms of the Bonus Award Agreement provides adequate support for the entry of the order granting a stay and compelling arbitration, we decline to address the alternative basis reached by the motion court, based on the September 2, 2015 email and Morgan Stanley's amended CARE Guidebook.[2]

Any arguments asserted by plaintiff that we have not expressly addressed lack sufficient merit to warrant discussion in a written opinion. R. 2:11-3(e)(1)(E).

Affirmed.

I hereby certify that the foregoing is a true copy of the original on file in my office.

CLERK OF THE APPELLATE DIVISION

---

[2] Because our analysis diverges, in part, from the motion court, we note that "we review orders and not, strictly speaking, reasons that support them. . . . [A] correct result, even if predicated on an erroneous basis in fact or in law, will not be overturned on appeal." El-Sioufi v. St. Peter's Univ. Hosp., 382 N.J. Super. 145, 169 (App. Div. 2005).

14                                                                      A-4749-18T3