**NOT FOR PUBLICATION WITHOUT THE
APPROVAL OF THE APPELLATE DIVISION**

This opinion shall not "constitute precedent or be binding upon any court." Although it is posted on the internet, this opinion is binding only on the parties in the case and its use in other cases is limited. R. 1:36-3.

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NOS.  A-3010-18T3
A-3066-18T3

LEE STOWELL,

      Plaintiff-Respondent,

v.

CANTOR FITZGERALD &
CO., RIAZ HAIDRI, and
JAMES GORMAN,

      Defendants-Appellants.

_____

Argued telephonically December 3, 2019 –
Decided February 27, 2020

Before Judges Hoffman, Currier, and Firko.

On appeal from the Superior Court of New Jersey, Law Division, Union County, Docket No. L-1247-18.

Emily L. Milligan (Cantor Fitzgerald & Co.) of the New York bar, admitted pro hac vice, argued the cause for appellant Cantor Fitzgerald & Co. (Midlige Richter LLC, attorneys; James S. Richter, of counsel and on the brief; Emily L. Milligan and Miguel A. Lopez (Cantor Fitzgerald & Co.) of the New York bar, admitted pro hac vice, on the joint briefs).

Eve I. Klein (Duane Morris LLP) of the New York bar, admitted pro hac vice, argued the cause for appellants Riaz Haidri and James Gorman (Duane Morris LLP, attorneys; Kathleen O'Malley, of counsel and on the brief; Eve I. Klein and Katelynn M. Gray, (Duane Morris LLP) of the New York bar, admitted pro hac vice, on the joint briefs).

Kara A. MacKenzie argued the cause for respondent (Law Offices of Gina Mendola Longarzo, LLC, attorneys; Kara A. MacKenzie, on the briefs).

PER CURIAM

In this action arising out of employment-related claims based on alleged violations of the New Jersey Law Against Discrimination (LAD),[1] we consider whether a dispute resolution policy and agreement (DRPA) sent by email and requiring an electronic signature was sufficient to compel plaintiff to litigate her claims in an arbitration forum, instead of before a judge and jury.

Because plaintiff had to scroll through the DRPA before she could electronically sign it, and she confirmed in the click box that she had read and accepted the terms of the DRPA, we are convinced the DRPA satisfied the requirements of Leodori v. Cigna Corp., 175 N.J. 293 (2003). We therefore reverse the order denying defendants' motion to compel arbitration.

Defendant Cantor Fitzgerald & Co. offered plaintiff a position as a senior vice president in its credit products group in July 2007. Plaintiff began

---

[1] N.J.S.A. 10:5-1 to -49.

2

A-3010-18T3

working in the financial industry in 1992 and had been employed by several financial institutions. The offer letter from Cantor stated in part: "You are required to execute the [employee handbook] and by doing so you will be agreeing to abide by Company policies, including but not limited to the Arbitration Agreement and Policy and the Confidentiality and Intellectual Property Agreement and Policy." On August 1, 2007, plaintiff executed an employment agreement and two other documents with handwritten signatures – an acknowledgement of receipt of the employee handbook and an arbitration agreement and policy (AAP). The handbook acknowledgment stated:

> By signing your name below you acknowledge that you received and read the Employee Handbook for Cantor Fitzgerald dated May 2006 ("the Handbook"). You also acknowledge that you understand and agree that all claims and disputes arising from the Company policies and procedures set forth in, without limitation, the Handbook, the accompanying Confidentiality and Intellectual Property Agreement and Policy and the conduct/compliance manuals, are subject to the Company's Arbitration Agreement and Policy, unless otherwise required by law.

The AAP provided in pertinent part:

> Cantor Fitzgerald, L.P. and its affiliates, including without limitation . . . Cantor Fitzgerald & Co. . . . believe that mandatory arbitration that is mutual and binding on all parties to the employment relationship is the quickest, least expensive and best overall method for resolving most employment and other

disputes. Accordingly, you understand and agree that any dispute or claim between you and any Cantor Fitzgerald Group Company . . . arising out of or in connection with any aspect whatsoever of your application for employment or your employment by a Cantor Fitzgerald Group Company, the termination of such employment and any other related issue . . . shall be submitted to and finally determined before a panel of arbitrators according to the American Arbitration Association's ("AAA") National Rules for the Resolution of Employment Disputes then in effect and as supplemented by this Arbitration Agreement and Policy, except that any dispute, claim or controversy with an NASD-regulated entity that constitutes a "required Submission" under Rule 10201 of the NASD Code of Arbitration Procedure shall be submitted to and finally determined before a panel of arbitrators according to the rules of The National Association of Securities Dealers Inc. then in effect and as supplemented by this Arbitration Agreement and Policy. The arbitration will take place in the city from the following list which is closest to the location in which you were most recently employed by a Cantor Fitzgerald Group Company . . . .

. . . .

THE DISPUTES OR CLAIMS SUBJECT TO ARBITRATION INCLUDE ANY AND ALL CLAIMS, DEMANDS OR ACTIONS OF ANY KIND INVOLVING YOU AND ANY CANTOR FITZGERALD GROUP COMPANY . . . INCLUDING THOSE ARISING OUT OF THE EMPLOYEE HANDBOOK, CONDUCT AND COMPLIANCE MANUALS, THOSE RELATED TO EMPLOYMENT, EMPLOYMENT DISCRIMINATION, . . . AND INCLUDING ANY TORT CLAIM OR CLAIM UNDER ANY FEDERAL, STATE, OR LOCAL STATUTE . . . .

A-3010-18T3

. . . .

YOU UNDERSTAND THAT THIS ARBITRATION AGREEMENT . . . MAKES ARBITRATION THE REQUIRED AND EXCLUSIVE FORUM FOR DISPUTES . . . AND THAT YOU KNOWINGLY AND VOLUNTARILY WAIVE ANY JURY TRIAL THAT YOU MIGHT OTHERWISE HAVE AND OTHER RIGHTS AS SET FORTH IN THIS ARBITRATION AGREEMENT . . . .

Plaintiff does not dispute she signed these documents. However, she contends she did not receive complete copies of the employee handbook or the AAP in August 2007, but concedes she never requested copies of the documents at any time after her hire.

In 2010, plaintiff was promoted to managing director and made a limited partner. She signed a partnership agreement with Cantor Fitzgerald, L.P.

Cantor implemented an Oracle human resources system for employees in 2012. During her deposition, plaintiff confirmed Oracle was a separate system requiring a different login password than used for checking her emails in Microsoft Outlook. She used Oracle to process her business expense reimbursements and to look at her quarterly partnership share numbers.

On April 15, 2014, Cantor's Human Resources (HR) department sent an email to its employees with the subject line "Updated Employee Handbook, Dispute Resolution Agreement and Confidentiality Agreement." Individual

employees were not listed in the "To" field because in emails of this type HR placed the employees' email addresses in the blind carbon copy field. Plaintiff did not recall receiving this email. However, Cantor's Legal Technology and E-Comm Administrator searched plaintiff's email account and confirmed she received the April 15 email.

The email, to all "colleagues," stated in pertinent part:

> We are pleased to announce the publication of an updated combined U.S. handbook for BGC/Cantor/NGKF and their affiliates, effective May 1, 2014 (the "Handbook"), as well as updated confidentiality and dispute resolution policies. These documents include numerous updates to the former policies. Below we have highlighted some key changes, but please refer to the documents for fuller descriptions of their terms.
>
> . . . .
>
> 7. New Dispute Resolution Agreement….
>
> . . . .
>
> The Handbook has been posted on the internal website as well as in Oracle. You will shortly receive a Workflow Mailer email directing you to (i) the Handbook Acknowledgment (which contains a link to the Handbook); (ii) the Dispute Resolution Agreement; and (iii), the Confidentiality Agreement. <u>Please review these important documents and electronically execute them by no later than April 23, 2014. Once you have electronically certified these documents, they will be posted to your Employee Self</u>

<u>Service folder in Oracle under Acknowledgments and Certifications.</u>[2]

Employees were also advised in the email of changes to the following policies: vacation carry-over, sick and personal leave, parental bonding, new primary caregiver leave, and updated short-term disability.

The handbook acknowledgment mentioned in the email stated:

> I also understand and agree that, unless otherwise prohibited by applicable law, all claims and disputes arising from or related to my employment or services with the Company, whether with Cantor, BGC, NGKF or one or more of their affiliates or strategic partners, are subject to the dispute resolution processes set forth in the Company's Dispute Resolution Policy and Agreement (as amended from time to time) (the "Agreement"), unless such Agreement provides that such claims and/or disputes are excluded from coverage thereunder.

The DRPA applied to employees and the "Company," including Cantor Fitzgerald, L.P. and any of its affiliates, subsidiaries or strategic partners.

Section 1 of the DRPA explains four dispute resolution processes:

> (a) If you are a Financial Industry Regulatory Authority or its successor (collectively, "FINRA") registered person and your dispute is eligible for resolution by arbitration in accordance with the FINRA Dispute Resolution process, then that dispute will be resolved under the applicable FINRA Dispute

---

[2] The underlined section was also in bold type.

A-3010-18T3

Resolution rules in effect at the time the matter is filed with FINRA;[3]

(b) If your business maintains an internal dispute resolution policy or process governing certain disputes (for example, internal resolution of disputes regarding the allocation of commissions among team members), then that internal dispute resolution policy will govern adjudication of disputes covered by that policy;

(c) If the dispute is not heard by FINRA (because you are not a registered person or for any other reason), and is not governed by an internal dispute resolution policy or process, then your dispute will be heard solely in, and resolved by, a judge either in a court sitting in a New York County, City, or State, or in the county in which your assigned Company office is located, if such office location is outside New York State; or

(d) If pre-dispute waiver of jury trial is not permitted by applicable law in the forum in which your dispute would be resolved, and you are unwilling to waive a jury trial at the time you bring your dispute, then your dispute will be heard solely in, and resolved by, arbitration under the American Arbitration Association or its successor (collectively, "AAA")'s Commercial Arbitration Rules (for contractors) or Employment Dispute (for employees) Rules to the extent it is not in conflict with Section 7 below.

Section 3 informed employees of their waiver of a jury trial, stating,

"[w]herever the dispute is resolved, you and the Company agree and

---

[3]  Defendants contend plaintiff's claims are subject to the FINRA dispute resolution process because she was licensed by FINRA while employed by Cantor.

<u>understand that any trial will not be before a jury, and both the Company and</u>

<u>you waive any jury trial right."</u>[4]

Under Section 9, an employee was advised that the DRPA superseded any other arbitration agreement previously signed by an employee or which was contained in a prior employee handbook:

> To the extent there is a conflict between this Agreement and any employment or services agreement between you and the Company regarding the resolution of disputes, or any Company or affiliate Handbook, then this Agreement controls. This Agreement governs disputes arising prior to, during, or after, termination of your employment or services to the Company and supersedes and replaces any dispute resolution policy with any affiliate of the Company that you previously executed (if any). Further, this Agreement governs all aspects of dispute resolution.

Section 10 stated: "If any part of this Agreement is determined by a court or arbitration panel to be invalid or unenforceable, every other part of this Agreement shall continue to be enforced."

The types of disputes covered by the DRPA were delineated in bold type in Section 11:

> Except as specifically excluded in Section 12[5] below, the disputes subject to this dispute resolution policy

---

[4]  This section was in bold type.

[5]  Plaintiff's LAD claims did not fall within the Section 12 exclusions.

include any and all claims, demands or actions of any kind involving you and any Company (as defined herein) (or any person employed or retained by or an agent of or a partner of the Company), including those arising out of employment or services agreements, handbooks, policies, conduct and compliance manuals, those related to employment or services, employment discrimination, compensation or benefits, and including any tort claim or claim under any federal, state, or local statute, regulation or ordinance (and any amendments thereto), such as Title VII of the Civil Rights Act of 1964, . . . and any similar federal, state, or local statute, regulation, or ordinance and any and all claims under the common law of any state or otherwise.

In the early morning hours of April 16, 2014, Cantor sent plaintiff an email titled "Open Notifications Summary," with links from HR to review and electronically execute the employee handbook, DRPA, and confidentiality agreement. Plaintiff did not recall receiving this email. Employees had until April 23, 2014 to review and electronically execute the documents.

On the same day, the Oracle system reflects that plaintiff requested and received a password reset for Oracle via email. The email to plaintiff with the link to reset her password advised "[t]his email can be ignored in case you didn't request a password reset . . . ." During her deposition, plaintiff stated she might have asked for the password reset but could not recall making that request. She also thought her assistants could request a reset of her Oracle password.

A second email was sent to plaintiff on April 17, 2014, which was identical to the email sent by HR the previous day. Plaintiff did not recall receiving this email or taking any action regarding it.

Padmaja Chunduru, the Global Head and Director of Corporate Technology for Cantor, explained the process an employee would undertake to electronically sign the DRPA.

First, the employee clicked on the link in the email and then logged into Oracle. The DRPA opened as a PDF in a separate window. The employee must scroll to the bottom of the document to reach the electronic signature click box. The click box provided in red font:

> By electronically clicking on the "Approve and Submit" button at the bottom of the page, I understand that (i) I have read and accept the terms of the documents herein; (ii) I intend for my click of the button to be, and agree that such click is, my electronic signature; and (iii) Cantor Fitzgerald, L.P., BGC Partners, Inc., and Newmark Knight Frank, as well as their affiliated entities, subsidiaries, and strategic partners (collectively referred to herein as the "Company") may rely on this electronic signature and any other electronic signatures I may execute in the future as being equivalent of my manual signature.

After the employee clicked on the checkbox, an "approve and submit" button was enabled. The employee clicked on that button to approve the document and submit the signed DRPA to Cantor. Chunduru stated: "It's very clearly mentioned there that someone has to review the document, check the

11

checkbox, which means that electronically acknowledging and then the approve and submit button becomes enabled." Employees could print and save documents, including the DRPA, from their employee self-service folders in Oracle.

Plaintiff testified her normal work hours were 7:30 a.m. to 5:30 p.m., Eastern Standard Time (EST). The Oracle system operates on Central Standard Time (CST). The electronic signature on the DRPA reflects that plaintiff signed it on April 17, 2014 at 6:57 a.m. CST (7:57 a.m. EST).

Plaintiff was terminated from her employment on June 13, 2017. Cantor contends the termination was part of a reduction in force and because of plaintiff's unsatisfactory job performance. Plaintiff contends she was terminated because she filed an internal sexual harassment grievance against defendants James Gorman and Raiz Haidri.

After plaintiff filed suit alleging violations of the LAD and common law claims, defendants filed a motion to compel arbitration. In opposing the motion, plaintiff asserted she had not signed the DRPA. Defendants' request for limited discovery regarding the DRPA was granted.

Thereafter, defendants renewed their application to compel arbitration. In its written decision of March 7, 2019 denying the motion, the court assumed that plaintiff had signed the DRPA. However, the court found the electronic

acknowledgement box was "not Le[o]dori and Atalese[6] compliant as it is ambiguous and fails to express a clear and unequivocal intent on the part of the plaintiff to waive her right to a jury trial."

In its analysis, the trial court relied on this court's recent decision in Skuse v. Pfizer, Inc., 457 N.J. Super. 539 (App. Div. 2019) and found the language in the "approved and submit" click box was deficient because it only stated the employee had "read and accepted the terms of the documents." It did not contain the word "agree" or "agreement." Furthermore, the trial court noted the click box did not advise an employee she was "agreeing to an arbitration agreement or waiving her right to a trial by jury when bringing a claim against her employer."

The court also found the substantive content of the emails distributed by Cantor's HR was inadequate, stating:

> Although it appears that [Cantor's] human resources department sent out an explanatory email to each employee informing them of the DRPA . . ., the actual email containing the links to the new policy documents including the DRPA contains little substantive context other than links to "Access Online Worklist", "Confidentiality and Intellectual Property Agreement", "Dispute Resolution Policy" and the "Employee Handbook May 1, 2014" . . . . Therefore, based on the manner in which the DRPA was

___

6 Atalese v. U.S. Legal Servs. Grp., 219 N.J. 430 (2014). Plaintiff has not asserted on appeal that the DRPA did not comply with Atalese.

distributed and explained, the [click box] should have contained an explicit reference to the DRPA or arbitration rather than the "documents herein" in order for plaintiff or another employee to have "clearly and unequivocally" expressed their intent to agree to arbitrate as required under New Jersey law.

The court also found the DRPA superseded the AAP, which would have required plaintiff to arbitrate her claims. It advised that "[a]lthough this [c]ourt is striking the arbitration clauses of the DRPA as invalid, the remaining portions of the DRPA should still remain in effect as per the express terms of the DRPA."

On appeal, defendants argue that <u>Leodori</u> and <u>Skuse</u> focused on the enforceability of a stand-alone arbitration acknowledgement form, not an executed arbitration agreement, and the holdings in those cases do not compel the invalidation of plaintiff's electronic signature here. In addition, defendants assert error in the trial court's ruling that the click box had to contain the words "agree" or "agreement" to enforce plaintiff's signature.

This court applies a de novo standard of review when reviewing a motion judge's determination of the enforceability of a contract. <u>Goffe v. Foulke Mgmt. Corp.</u>, 238 N.J. 191, 207 (2019) (citing <u>Hirsch v. Amper Fin. Servs., LLC</u>, 215 N.J. 174, 186 (2013)). When reviewing arbitration clauses within contracts, "[t]he enforceability of arbitration provisions is a question of law; therefore, it is one to which we need not give deference to the analysis by

the trial court . . . ." Ibid. (citing Morgan v. Sanford Brown Inst., 225 N.J. 289, 303 (2016)).

We begin by recognizing the Federal and New Jersey Arbitration Acts express a general policy favoring arbitration. Atalese, 219 N.J. at 440; see also 9 U.S.C. §§ 1 to 16; N.J.S.A. 2A:23B-1 to -32. "The public policy of this State favors arbitration as a means of settling disputes that otherwise would be litigated in a court." Badiali v. N.J. Mfrs. Ins. Grp., 220 N.J. 544, 556 (2015) (citing Cty. Coll. of Morris Staff v. Cty. Coll. of Morris Staff Ass'n, 100 N.J. 383, 390 (1985)).

In Leodori, the Court found that an acknowledgment of receipt of a handbook, which included an arbitration provision, did not create a contractual obligation to arbitrate because the acknowledgment stated only that the employee "received" the handbook. 175 N.J. at 307. There was no executed arbitration agreement. Id. at 298. Because the plaintiff did not sign the agreement that accompanied the employer's handbook, and there were no other explicit indications that the employee intended to abide by its provisions, the arbitration policy was not enforceable. Id. at 305. "[A]n arbitration provision cannot be enforced against an employee who does not sign or otherwise explicitly indicate his or her agreement to it." Id. at 306.

The Court specifically noted that "the acknowledgment form that [the] plaintiff did sign would have sufficed as concrete proof of a waiver had it stated that the employee had agreed to the more detailed arbitration provision contained in the handbook." Id. at 307.

In addition, the Court stated an acknowledgement form signed by the employee need not recite "verbatim" the arbitration policy, "so long as the form refers specifically to arbitration in a manner indicating [the] employee's assent, and the policy is described more fully in an accompanying handbook or in another document known to the employee." Ibid. The Court emphasized, "with minimal effort, employers can revise the language to include an indication that the recipient has received and agreed to an arbitration policy." Ibid. (emphasis in original).

As stated, in Leodori, the Court considered a form which the plaintiff manually signed, acknowledging her receipt of a handbook that contained an arbitration policy. In the seventeen years since Leodori, with the advancement of technology, employers routinely communicate with their employees through digital means, most commonly email. As occurred here, employers regularly use email to disseminate company policies, including arbitration agreements. Notwithstanding the change in the means of communication, we remain

16                                                                     A-3010-18T3

steadfast to the Leodori principle that requires an employee's explicit agreement to a binding arbitration policy.

In Skuse, the employer Pfizer, disseminated by email a mandatory arbitration policy to its employees as a training module. 457 N.J. Super. at 545. The email linked the employees to the company's computer-based training portal, the same portal employees used for all their assigned trainings. Id. at 546. The training module consisted of four slides that presented an overview of the company's new arbitration policy; however, the arbitration agreement was included in a separate link and not displayed in the module. Id. at 546-47. Employees agreed to the arbitration agreement by checking a box which read "CLICK HERE to acknowledge." Id. at 548 (emphasis in original).

One of the slides informed employees the agreement was a mandatory condition of their employment. Id. at 546. If the employee did not acknowledge the policy and continued to work for Pfizer for sixty days, the employee would be deemed bound by the arbitration policy. Id. at 548. The final slide thanked employees for "reviewing" the presentation. Ibid. (emphasis in original).

A different panel of this court held that Pfizer's unilateral action of binding its employees to arbitrate all claims, by acknowledging or ignoring a brief presentation summarizing the agreement, did not constitute the "explicit,

17

affirmative <u>agreement</u> that <u>unmistakably</u> reflects [an] employee's <u>assent</u>" to arbitration. <u>Id.</u> at 557 (emphasis in original) (quoting <u>Leodori</u>, 175 N.J. at 303). The court concluded the words "agree" or "agreement" should be used in the click box. <u>Id.</u> at 560. An "acknowledgment" of the arbitration agreement or policy did not meet the <u>Leodori</u> standard of assent. <u>Id.</u> at 560-61.

In our review of the DRPA here and the process surrounding its dissemination to plaintiff, we are satisfied that Cantor met the mandate of <u>Leodori</u> and intent of <u>Skuse</u>. Unlike those cases where the employer sought to compel arbitration through another document – the handbook acknowledgment form or an electronic acknowledgement in a training module – here, plaintiff executed the DRPA with an electronic signature.

The April 14, 2014 email from Cantor's HR specifically referred to the DRPA in its subject line. The body of the email advised of an updated handbook and DRPA. The email specified changes to several significant policies of interest to most employees, such as vacation carry-over, sick and personal leave, and time following the birth or adoption of a child. Plaintiff was advised an email would follow, with links to the DRPA and the handbook. Employees had seven days to review and electronically sign the documents.

On April 16, 2014, plaintiff received the referenced email. It contained the names of each document and links to it via the Oracle system. That day, plaintiff requested and received a password reset for her Oracle account.

On April 17, 2014, Cantor HR again sent plaintiff an email with links to review and electronically execute the DRPA and employee handbook. The Oracle system user logs indicated plaintiff signed the DRPA at 7:57 a.m. EST, within thirty minutes after plaintiff typically reported for work. In light of the uncontroverted documented evidence, the trial court assumed plaintiff had electronically signed the DRPA.

Nevertheless, the court concluded the signature was not sufficient to constitute knowing assent to the DRPA under Skuse. Because we find the circumstances here differ from those before the Skuse court, we are constrained to conclude differently.

Plaintiff and all Cantor employees were apprised they would be receiving an email describing changes to specific company policies, including the DRPA. Upon receipt of the email, the employee clicked on the attached link and then logged into her Oracle account. The DRPA opened as a PDF in a separate window. The employee had to scroll down to the bottom of the DRPA before reaching a click box. In red font, the click box advised the employee that by clicking on the "approve and submit" button at the bottom of

the page, the employee understood that she had "read and accept[ed] the terms of the document" and intended the click to be her electronic signature, which Cantor could rely on as the equivalent of a manual signature. A click activated the "approve and submit" button, enabling the transmission of the DRPA to Cantor.

Unlike in Skuse, here, plaintiff had to open and scroll through the DRPA before she could accept its terms. The click box was integrated into the DRPA. It was not a separate form or slide. Importantly, plaintiff could not bypass the DRPA to get to the click box and accept its terms.

When plaintiff clicked on the box at the bottom of the DRPA, she did more than acknowledge the document. Again, differing from Skuse, plaintiff's click on the box here confirmed she had read and accepted the terms of the DRPA. We are satisfied that accepting the terms of an agreement can be reasonably construed as the equivalent of agreeing to its terms. In accepting the terms of the DRPA, plaintiff affirmatively assented to the arbitration policy.[7]

The order denying defendants' motion to compel arbitration is reversed. The matter is remanded to the trial court for an order dismissing the complaint without prejudice and compelling the parties to arbitration.

_____

[7] In light of our conclusion, we need not consider the validity of the AAP.

20                                                    A-3010-18T3

Reversed and remanded for proceedings in accordance with this opinion.

We do not retain jurisdiction.

I hereby certify that the foregoing
is a true copy of the original on
file in my office.

CLERK OF THE APPELLATE DIVISION

A-3010-18T3