814 A.2d 1098

PAUL LEODORI, PLAINTIFF–RESPONDENT, v. CIGNA CORPORA-
TION, CIGNA INSURANCE COMPANY, INSURANCE COMPA-
NY OF NORTH AMERICA, WILSON TAYLOR, THOMAS WAG-
NER, GERALD ISOM, JAMES ENGEL, JOHN MURPHY, DAVID
GOLD, BEVERLY SHERBONDY, STEPHANIE MIDDLETON,
ANTHONY SMITH, ALFRED DECRANE, JAMES J. RITCHIE
AND ROBERT CAMPBELL, DEFENDANTS–APPELLANTS,
AND JOHN DOES 1–5, AND ABC CORPORATIONS 1–5, SAID
INDIVIDUALS AND CORPORATIONS BEING FICTITIOUS, DE-
FENDANTS.

PAUL LEODORI, PLAINTIFF–RESPONDENT, v. CIGNA CORPORA-
TION, CIGNA INSURANCE COMPANY AND INSURANCE
COMPANY OF NORTH AMERICA, DEFENDANTS–APPEL-
LANTS, AND SCHNADER HARRISON SEGAL & LEWIS, LLP,
ARLIN ADAMS, LISA DETWEILER, WILSON TAYLOR, THOM-
AS WAGNER, GERALD ISOM, JAMES ENGEL, JOHN MUR-
PHY, DAVID GOLD, BEVERLY SHERBONDY, STEPHANIE
MIDDLETON, ANTHONY SMITH, JAMES J. RITCHIE, ROBERT
CAMPBELL, DENNIS KANE, ALFRED DECRANE, PETER
LARSON, JOSEPH NEUBAUER, HAROLD WAGNER, CAROL
COX WAIT, JOHN DOES 1–10 AND ABC CORPORATIONS 1–10,
SAID INDIVIDUALS AND CORPORATIONS BEING FICTI-
TIOUS, DEFENDANTS.

Argued December 2, 2002—Decided February 13, 2003.

294

*Edward T. Ellis* and *Michael K. Furey*, argued the cause for appellants (*Riker, Danzig, Scherer, Hyland & Perretti,* attorneys for CIGNA Corporation, Wilson Taylor, Thomas Wagner, Gerald Isom, John Murphy, Beverly Sherbondy, Stephanie Middleton, Anthony Smith, Alfred Decrane, James J. Ritchie and Robert Campbell and *Montgomery, McCracken, Walker & Rhoads,* attorneys for CIGNA Insurance Company, Insurance Company of North America, James Engel and David Gold, attorneys; *Mr. Ellis, Mr. Furey, Janice Greenberg Dubler* and *Michael H. Wilck,* on the briefs).

*Paul Leodori,* argued the cause *pro se.*

The opinion of the Court was delivered by

VERNIERO, J.

This is an employment action. Plaintiff alleges that his employer fired him in violation of the New Jersey Conscientious Employee Protection Act, *N.J.S.A.* 34:19–1 to –8 (CEPA). The merit of that allegation is not before us. We are called on solely to evaluate the enforceability of a waiver-of-rights provision contained in an employee handbook distributed by defendant. That provision requires employees to resolve employment-related claims by submitting them to an arbitrator rather than to a jury, which is otherwise their right. Although the provision is unambiguous, we are unable to conclude that plaintiff clearly had agreed to it. We thus hold that the waiver is invalid as applied to this plaintiff.

I.

Plaintiff Paul Leodori began working for Insurance Company of North America (INA) in June 1995. INA's sister company is CIGNA Insurance Company (CIGNA). (Unless otherwise indicat-

ed, we shall refer to INA and CIGNA collectively as defendant or the company.) During the course of his employment, plaintiff served as an in-house attorney at INA's Division of Legal & Public Affairs (L & PA). In August 1994, nearly a year before plaintiff had begun his employment, L & PA adopted an arbitration policy that required arbitration as a final means for resolving employment-related disputes between defendant and its employees. In August 1996, INA sent a revised policy via inter-office mail and U.S. mail to all L & PA employees, including plaintiff. The revised policy also embraced arbitration as the final method by which defendant and its employees would resolve their disagreements.

A subsequent L & PA handbook contained a similar clause. Defendant distributed that handbook in June 1998 to all employees, including plaintiff. (We recite at length certain excerpts from the L & PA handbook and from other documents because they are critical to the parties' arguments.) The handbook bears this disclaimer:

> This handbook does not alter the "at will" status of your employment. Just as you may terminate your employment at any time for any reason, your employment may be terminated at any time for any reason. Except for the **arbitration policy mentioned in this handbook, which is a term and condition of your continued employment,** the policies and practices set forth herein are for your information and guidance. Things change and there is no guarantee that the policies and practices contained herein will not change in the future. The company reserves the right to alter, amend, and make exceptions to this handbook at any time in its sole discretion, with or without prior notice.

The L & PA handbook also contains the following arbitration provision:

> In the interest of fairly and quickly resolving employment-related disagreements and problems, CIGNA's policy is that arbitration by a neutral third-party is the required and final means for the resolution of any serious disagreements and problems not resolved by the company's internal dispute resolution process. Both CIGNA and the employee will be bound by any decision made by a neutral arbitrator. If the employee or CIGNA do not abide by the arbitrator's decision, either party may go to court to enforce the arbitrator's decision, but **arbitration must be used before going to court.** This policy is intended to prevent an employee from going to court over employment-related disputes; it is not intended to take away any other rights.

Along with the L & PA handbook, the company distributed an acknowledgment form that states:

> I hereby acknowledge that I have received a copy of the 1998/99 Legal & Public Affairs employee handbook.
>
> I understand this handbook includes information on division policies and programs and that I am responsible for knowing the policies and information. I further understand any of the policies and programs are subject to change at the discretion of senior management and that the handbook and its contents are not a contract of employment.

As is evident, that language does not refer specifically to arbitration. Plaintiff signed the acknowledgment form in June 1998.

In July 1998 defendant distributed to plaintiff and other employees another handbook. That handbook, entitled "You and CIGNA," also contains a purported agreement to arbitrate all employment disputes. It provides, in part:

> The agreement to arbitrate applies to serious employment-related disagreements and problems, which are those that concern a right, privilege, or interest recognized by applicable law. Such serious disputes include claims, demands, or actions under Title VII of the Civil Rights Act of 1964, the Civil Rights Act of 1866, the Civil Rights Act of 1991, the Equal Pay Act, the Age Discrimination in Employment Act, the Employee Retirement Security Act of 1974, the Fair Labor Standards Act, the Rehabilitation Act of 1973, the Americans with Disabilities Act, the Family and Medical Leave Act, and any other federal, state, or local statute, regulation, or common law doctrine, regarding employment discrimination, conditions of employment, or termination of employment.

An acknowledgment form accompanied the "You and CIGNA" handbook, similar to the one that had accompanied the L & PA handbook. It provides: "This is to acknowledge that I have received my copy of the July 1998 employee handbook, You and CIGNA. I have reviewed the material which includes information on policies, programs and services for employees of the CIGNA companies." Plaintiff signed that form in September 1998.

A separate form, entitled "Employee Handbook Receipt and Agreement" (Agreement), also contains a place for an employee to sign. (We cannot discern from the record whether that form is contained on an actual page of the "You and CIGNA" handbook or whether it was distributed or made available to plaintiff separate-

ly. Our analysis would be the same under any of those circumstances.) The Agreement states:

> This is to acknowledge that I have received my copy of the July 1998 employee handbook, You and CIGNA. I understand that by accepting employment and being eligible to receive increases in compensation and benefits, I am agreeing to the following two important terms of my employment described in You and CIGNA: (1) my employment can be terminated by me or my employer at any time for any reason—therefore, my employment is at the will of either party, and (2) I will use the Company's internal and external employment dispute resolution processes to resolve legal claims against the Company—therefore rather than go to court or to a government agency for a hearing to decide my legal claim, I will submit my employment related legal claims except workers' compensation and unemployment compensation to final and binding neutral third party arbitration. *I understand further that these two terms of my employment replace and supersede any prior agreement concerning these terms and cannot be changed except in writing signed by me and the president of the Company.*
>
> [(Emphasis added).]

Significantly, plaintiff did not sign the Agreement. The signature line in plaintiff's copy was left blank.

Echoing the importance of the Agreement, the opening page of the "You and CIGNA" handbook states, in part:

> This handbook contains only two terms of your employment. They are very important. The first is that your employment is not for any fixed period of time. Just as you can terminate your employment, at any time for any reason, the Company can terminate your employment at any time for any reason. The second is that by accepting employment and being eligible to receive increases in compensation and benefits, you agree that you will not go to court or a government agency for a hearing to decide an employment-related claim. Instead, you will resolve all employment related legal disputes (except worker[s'] compensation and unemployment compensation) by going to a neutral third party arbitrator. *Regardless of what anyone may have told you or you may have read before you were hired or after, these two terms of your employment are the full and complete agreement between you and the Company concerning these terms and cannot be changed except by a written agreement between you and your employer signed by the President of the Company.*

Prior to signing the "You and CIGNA" acknowledgment form, plaintiff received an e-mail dated August 17, 1998, which defendant had transmitted to all CIGNA employees. The e-mail states, in part:

> Our recent handling of the employee Handbook receipt and agreement process left a lot to be desired. Virtually all aspects of the communication and distribution process that could have gone wrong did—moreover, the process was too complicat-

ed and legalistic. . . . Our goal was—and is—to ensure that everyone who works for CIGNA [has] a clear understanding and commitment to ensuring the successful implementation of the existing policies and programs we have designed to create a respectful and productive work environment in our company. We wanted to be sure that everyone read the Handbook rather than tossing it in the bottom drawer as some may have done in the past.

. . . .

Upon reflection, and based upon your feedback, we are removing the link between signing the Handbook receipt and future compensation and benefits actions. We now believe that the recent high level of visibility and dialogue around the Handbook more than meets the test of ensuring that everyone is fully aware of company policy and eliminates the need for potential penalties.

For those of you who have not yet acknowledged receipt of the Handbook, a simplified form similar to those we have used in prior years is available from your supervisor. For those who already have signed the original receipt, you need take no further action; however, if you would like, you can request and sign the revised form.

Plaintiff alleges that during the course of his employment he became aware of actions by certain officers or employees of defendant that he believed were improper or illegal. According to plaintiff, he reported those allegations to the general counsel as well as to others within the company. Thereafter, INA suspended plaintiff with pay and then transferred him to CIGNA's payroll. Defendant hired a retired federal appellate judge to investigate the asserted improprieties. After receiving the former judge's report concluding that neither the facts nor law supported plaintiff's allegations, defendant terminated plaintiff's employment in May 1999.

Plaintiff filed a complaint in the Law Division in February 2000. He alleged, among other things, that defendant had violated CEPA by firing him because of what he had uncovered and reported. The trial court dismissed that complaint, finding that the parties had entered into a binding agreement to arbitrate their dispute. Plaintiff filed a second Law Division complaint in June 2000, asserting virtually the same claims as those alleged in his earlier action. The trial court dismissed that complaint as well. Plaintiff appealed. In an unreported decision, the Appellate Division reversed the trial court's dismissal of plaintiff's first complaint. As a result, the panel concluded that the second complaint

was moot. We granted defendant's petition for certification, 172 *N.J.* 357, 798 *A.*2d 1270 (2002), and now affirm.

## II.

Two recent decisions of this Court guide our disposition here. In *Garfinkel v. Morristown Obstetrics & Gynecology Associates,* we recognized as settled law "[t]hat parties to an agreement may waive statutory remedies in favor of arbitration[.]" 168 *N.J.* 124, 131, 773 *A.*2d 665 (2001). We stressed, however, that "[t]o enforce a waiver-of-rights provision in this setting, the Court requires some concrete manifestation of the employee's intent as reflected in the text of the agreement itself." *Id.* at 135, 773 *A.*2d 665. Consistent with basic contract law, we also observed that "[i]n interpreting a contract, [i]t is not the real intent but the intent expressed or apparent in the writing that controls." *Ibid.* (internal citations and quotation marks omitted) (second alteration in original).

The subject of the dispute in *Garfinkel* was a waiver-of-rights provision contained in an employment agreement between a physician and his employer. The provision stated that the parties would resolve "any controversy or claim" that arose from the agreement by submitting it to arbitration. *Id.* at 134, 773 *A.*2d 665. Two years after signing the agreement, the physician alleged that his employer had terminated him in violation of the Law Against Discrimination, *N.J.S.A.* 10:5–1 to –42(LAD). We held that the agreement was insufficient to constitute a waiver of remedies under the LAD. *Garfinkel, supra,* 168 *N.J.* at 134, 773 *A.*2d 665. We reasoned that the language in the waiver provision suggested that the parties had intended only to arbitrate "those disputes involving a contract term, a condition of employment, or some other element of the contract itself." *Ibid.* The language did not, in our view, signal an intention to arbitrate disputes that were governed more broadly by the LAD or by similar statutes. *Ibid.*

We also offered guidance to future parties. We stated:

> The Court will not assume that employees intend to waive [statutory] rights unless their agreements so provide in unambiguous terms. That said, we do not suggest that a party need refer specifically to the LAD or list every imaginable statute by name to effectuate a knowing and voluntary waiver of rights. To pass muster, however, a waiver-of-rights provision should at least provide that the employee agrees to arbitrate all statutory claims arising out of the employment relationship or its termination. It should also reflect the employee's general understanding of the type of claims included in the waiver, *e.g.*, workplace discrimination claims.
>     [*Id.* at 135, 773 A.2d 665.]

We also reviewed a waiver-of-rights agreement in *Martindale v. Sandvik, Inc.*, 173 *N.J.* 76, 800 *A.*2d 872 (2002). The agreement in that case was contained in an application for employment that the plaintiff had completed and signed prior to being hired by the defendant corporation. The relevant provision indicated that the plaintiff had agreed "that all disputes relating to my employment with [the corporation] or termination thereof shall be decided by an arbitrator[.]" *Id.* at 81–82, 800 *A.*2d 872. The provision also stated, "As a condition of my employment, I agree to waive my right to a jury trial in any action or proceeding related to my employment with [the corporation]." *Id.* at 81, 800 *A.*2d 872.

The threshold issue in *Martindale* was whether an arbitration agreement contained in an employment application was enforceable as a matter of law. To answer that question, the Court turned first to the Federal Arbitration Act (FAA) through which Congress has sought "to place arbitration agreements upon the same footing as other contracts." *Id.* at 84, 800 *A.*2d 872 (internal citation and quotation marks omitted). We then reviewed contract principles from this and other jurisdictions, concluding that an agreement to arbitrate contained in an application for employment "is binding, as would be any other contractual term not contrary to public policy contained in a signed employment application that led ... to employment." *Id.* at 89, 800 *A.*2d 872.

We also observed that "the FAA specifically permits states to regulate contracts, including contracts containing arbitration agreements under general contract principles; therefore, an arbitration clause may be invalidated 'upon such grounds as exist at law or in equity for the revocation of any contract.'" *Id.* at 85,

800 *A.2d* 872 (quoting 9 *U.S.C.* § 2). As for the actual agreement in *Martindale,* we concluded that its waiver-of-rights provision "not only was clear and unambiguous, it was also sufficiently broad to encompass reasonably [the] plaintiff's statutory causes of action." *Id.* at 96, 800 *A.2d* 872.

■ In sum, *Garfinkel* and *Martindale* together set forth two overarching tenets. First, consistent with federal law, a state cannot subject an arbitration agreement to more burdensome requirements than those governing the formation of other contracts. Within that framework, a state is permitted to regulate agreements, including those that relate to arbitration, by applying its contract-law principles that are relevant in a given case. Second, to be enforceable under those principles in New Jersey, a waiver-of-rights provision must reflect that an employee has agreed clearly and unambiguously to arbitrate the disputed claim. Generally, we determine a written agreement's validity by considering the intentions of the parties as reflected in the four corners of the written instrument.

## III.

Applying those tenets to the case at hand, we must answer two related questions: Does the relevant waiver-of-rights provision reflect an unambiguous intention to arbitrate a CEPA claim? If yes, does the record before us indicate that plaintiff clearly had agreed to that provision?

■ The first question requires only a brief discussion. We are satisfied that the clause in the "You and CIGNA" handbook unambiguously sets forth the drafter's intention to arbitrate all employment-related claims, including those that might be asserted under CEPA. (We focus on that handbook because the record fairly demonstrates that defendant intended it to supersede any prior agreement between the parties.) The relevant provision lists numerous federal statutes by name as falling within its purview, in addition to "any other federal, state, or local statute,

regulation, or common-law doctrine, regarding employment discrimination, conditions of employment, or termination of employment." That language easily satisfies the requirement that such clauses provide an unmistakable expression of an employee's willingness to waive his or her statutory remedies. *Martindale, supra,* 173 *N.J.* at 95, 800 *A.*2d 872; *Garfinkel, supra,* 168 *N.J.* at 135, 773 *A.*2d 665.

■ The second question, whether plaintiff actually had agreed to the provision, requires a lengthier discussion. It implicates whether an employee's implied agreement to waive statutory rights is sufficient in these circumstances or whether some explicit, affirmative expression of agreement is needed. In our view, a valid waiver results only from an explicit, affirmative agreement that unmistakably reflects the employee's assent. If not already part of our jurisprudence, that view flows directly from existing case law. *See, e.g., Garfinkel, supra,* 168 *N.J.* at 135, 773 *A.*2d 665 (instructing that when asked to enforce arbitration clause, "[t]he Court will not assume that employees intend to waive [their] rights"); *Red Bank Reg'l Educ. Ass'n v. Red Bank Reg'l High Sch. Bd. of Educ.,* 78 *N.J.* 122, 140, 393 *A.*2d 267 (1978) (declaring that "[t]o be given effect, any such waiver [of statutory rights] must be clearly and unmistakably established"); *Paul v. Timco, Inc.,* 356 *N.J.Super.* 180, 185, 811 *A.*2d 948 (App.Div.2002) (observing that "[o]ne party to a contract may not unilaterally impose an obligation to arbitrate upon another party to the contract").

Defendant argues that plaintiff's receipt of the handbook and his continued employment at the company constituted an implied but enforceable agreement to abide by the arbitration policy. In support, defendant cites *Woolley v. Hoffmann–La Roche, Inc.,* 99 *N.J.* 284, 491 *A.*2d 1257, *modified,* 101 *N.J.* 10, 499 *A.*2d 515 (1985). In *Woolley,* this Court held that "absent a clear and prominent disclaimer, an implied promise contained in an employment manual that an employee will be fired only for cause may be enforceable against an employer even when the employment is for an indefinite term and would otherwise be terminable at will." *Id.*

at 285–86, 491 *A*.2d 1257. Succinctly stated, *"Woolley* modifies the nature of the employment relationship by imposing an obligation on the employer to abide by the terms of the manual." *Wade v. Kessler Inst.,* 172 *N.J.* 327, 340, 798 *A*.2d 1251 (2002) (citing *Woolley, supra,* 99 *N.J.* at 292, 491 *A*.2d 1257).

Defendant's reliance on *Woolley* is misplaced. *Woolley's* implied-contract doctrine focuses on an employer's obligation to its employees, not vice versa. Defendant misreads a passage from a post-*Woolley* decision, *Nicosia v. Wakefern Food Corp.,* in which we stated: "An employee may not select among the provisions of [an] employment manual to determine which provision should give rise to enforceable contractual obligations." 136 *N.J.* 401, 411, 643 *A*.2d 554 (1994). In other words, when seeking to bind an employer to its discharge procedures, an employee must look beyond an isolated clause and accept the handbook's complete text, including any provision that might relieve the employer from the claimed obligation. *Nicosia* does not suggest that, by merely receiving a handbook that contains an arbitration clause, employees are bound to that clause when they do not seek to enforce it or the handbook generally.

Apart from the inapplicability of its implied-contract doctrine, *Woolley* does not govern for the separate reason, specific to this case, that defendant expressly disclaimed the formation of a *Woolley* contract. As noted, the opening page of the "You and CIGNA" handbook informs employees that "the Company can terminate your employment at any time for any reason." By using that language, defendant carefully attempted to preserve plaintiff's at-will status, unencumbered by any implied promise. Put differently, we are persuaded that the company intended to be responsible only for those obligations that it affirmatively had accepted. Under that circumstance, defendant cannot now invoke *Woolley's* holding to bind plaintiff in the manner sought here.

■ Absent *Woolley,* our analysis is governed by familiar contract principles. Unless required by the Statute of Frauds, *N.J.S.A.* 25:1–5 to –16, or as otherwise provided by law, contracts

do not need to be in writing to be enforceable. When one party, however, presents a contract for signature to another party, the omission of that other party's signature is a significant factor in determining whether the two parties mutually have reached an agreement. *Cf.* 1 Richard A. Lord, *Williston on Contracts* § 2:3 (4th ed.1990) (noting that although party's signature on written contract "probably" is not required in absence of statute, "a signature is customary and desirable").

Without plaintiff's signature on the Agreement that accompanied the "You and CIGNA" handbook, we cannot enforce the arbitration provision unless we find some other explicit indication that the employee intended to abide by that provision. No such indication appears in the record. Plaintiff's intention is further clouded by defendant's August 17, 1998, e-mail that acknowledges that the company's "handling of the employee Handbook receipt and agreement process left a lot to be desired." That e-mail offered employees the option of retaining the acknowledgment form that they previously had signed (that made no mention of arbitration) or "request[ing] and sign[ing] the revised form." The e-mail also states on behalf of defendant, "we are removing the link between signing the Handbook receipt and future compensation and benefits actions."

Plaintiff argues that that language served to revoke an "offer" to arbitrate before he "could even accept [it]." Plaintiff's argument, standing alone, is not entirely persuasive. A portion of the e-mail not emphasized by plaintiff states that defendant believed that "everyone is fully aware of company policy," suggesting that the company had not rescinded what it considered a valid agreement. That said, the e-mail transmission is open to interpretation such that doubts are raised concerning the agreement's validity. We are constrained to conclude that the record as a whole does not demonstrate that plaintiff had surrendered his statutory rights knowingly and voluntarily, which remains the critical inquiry.

Defendant contends that reinstating plaintiff's Law Division complaint would run afoul of the FAA. We disagree. We do no

more than conclude that an arbitration provision cannot be enforced against an employee who does not sign or otherwise explicitly indicate his or her agreement to it. Consistent with basic contract law, that unremarkable conclusion in no way offends the FAA. The Court is free to consider whether a purported arbitration agreement contains those same elements that are required to uphold any other contract. Included in those requirements is the assent of the party against whom enforcement is sought, as customarily indicated by that party's signature.

Defendant's own documents contemplated plaintiff's signature as a concrete manifestation of his assent. As already noted, the Agreement that accompanied the "You and CIGNA" handbook includes a place for employees to sign. Moreover, the Agreement instructs that its terms cannot be changed, "except in writing signed by [the employee] and the president of the Company." The opening page of the handbook mirrors that requirement. Our contract law does not permit defendant to contemplate or require plaintiff's signature on an agreement and then successfully to assert that the omission of that signature is irrelevant to the agreement's validity. *Cf. Restatement (Second) of Contracts* § 60 (1981) (instructing that offeree must comply with offeror's prescribed manner of acceptance to create contract).

Lastly, we agree with defendant that plaintiff knew of the company's arbitration policy based on its publication in numerous documents that he had received during his employment. The record, however, contains no one document or other piece of evidence that unmistakably reflects plaintiff's agreement to that policy. Plaintiff's status as an attorney does not alter our disposition provided that he truly had not intended to waive his rights under CEPA. See *Garfinkel, supra,* 168 *N.J.* at 136, 773 *A.*2d 665 (invalidating waiver provision irrespective of employee's status as physician).

In sum, *Woolley's* implied-contract doctrine does not extend to a waiver-of-rights agreement. Although not strictly required, a party's signature to an agreement is the customary and perhaps

surest indication of assent. Absent plaintiff's signature here, we cannot enforce the waiver provision unless we find some other unmistakable indication that the employee affirmatively had agreed to arbitrate his claims. Finding no such proof, we must hold for plaintiff.

## IV.

In its thoughtful brief, defendant expresses concern over an employer's ability to effectuate arbitration agreements as its chosen method for resolving workplace disputes. Our holding is not to be construed as requiring employers to negotiate individual agreements with their entire workforce to implement a company-wide arbitration policy. The parties would have effectuated such a policy in this case had defendant only obtained plaintiff's signature on the pre-printed Agreement that it attached to the "You and CIGNA" handbook or otherwise made available to its employees. Plaintiff has admitted that signing that form would have served as a clear manifestation of his intent to waive his right to a jury trial under CEPA.

Similarly, the acknowledgment form that plaintiff did sign would have sufficed as concrete proof of a waiver had it stated that the employee had agreed to the more detailed arbitration provision contained in the handbook. (The acknowledgment form states only that plaintiff had "received" the handbook, not that he had "agreed" to its terms.) We assume that even large employers presently require their employees to sign similar forms as a routine part of the handbook-distribution process. Thus, with minimal effort, employers can revise the language to include an indication that the recipient has received *and agreed* to an arbitration policy. The acknowledgment form need not recite that policy verbatim so long as the form refers specifically to arbitration in a manner indicating an employee's assent, and the policy is described more fully in an accompanying handbook or in another document known to the employee.

Our approach here is analogous to the one followed in *Mt. Hope Development Associates v. Mt. Hope Waterpower Project,* 154 *N.J.* 141, 712 *A.*2d 180 (1998). At issue in that case was the Alternative Procedure for Dispute Resolution Act, *N.J.S.A.* 2A:23A–1 to –19 (APDRA). That statute sets forth in detail the manner in which parties may resolve disputes without resorting to traditional civil litigation. *Mt. Hope, supra,* 154 *N.J.* at 145–46, 712 *A.*2d 180. The parties in *Mt. Hope* had entered into a consent judgment that referred without elaboration to the APDRA as providing the procedures under which they would settle any future claims between them. *Id.* at 144, 712 *A.*2d 180. We concluded that that reference was sufficient to bind the parties to all aspects of the APDRA, including its limitation on a party's right to judicial review. *Id.* at 146, 712 *A.*2d 180.

So, too, an employer and its employee may agree to arbitrate their disputes by referring generally to an arbitration policy contained in a separate writing, provided that the policy itself clearly reflects the employee's knowing and voluntary waiver of rights. The "You and CIGNA" handbook qualifies as such a writing. The problem in this case is that the acknowledgment form signed by plaintiff contains no statement that he had agreed to the arbitration provision. For the reasons already expressed, without some affirmative indication of plaintiff's assent, that provision cannot operate to deny plaintiff his rights under CEPA to which he otherwise is entitled.

V.

The judgment of the Appellate Division is affirmed.

*For affirming*—Chief Justice PORITZ and Justices COLEMAN, LONG, VERNIERO, LaVECCHIA, ZAZZALI and ALBIN—7.

*Opposed*—None.