**NOT FOR PUBLICATION WITHOUT THE
APPROVAL OF THE APPELLATE DIVISION**

This opinion shall not "constitute precedent or be binding upon any court." Although it is posted on the internet, this opinion is binding only on the parties in the case and its use in other cases is limited. R. 1:36-3.

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO. A-1410-20

GREGG RUSSO,

    Plaintiff-Appellant,

v.

CHUGAI PHARMA USA, INC.
and NORIHISA ONOZAWA,

    Defendants-Respondents.

_____

Argued September 7, 2021 – Decided September 16, 2021

Before Judges Alvarez and Gooden Brown.

On appeal from the Superior Court of New Jersey, Law Division, Essex County, Docket No. L-6391-20.

Lisa Manshel argued the cause for appellant.

Joseph C. Toris argued the cause for respondents (Jackson Lewis, PC, attorneys; John F. Tratnyek, of counsel and on the brief; Joseph C. Toris, on the brief).

PER CURIAM

Plaintiff Gregg Russo appeals from the January 15, 2021 Law Division order compelling arbitration and dismissing his discrimination complaint against Chugai Pharma USA, Inc. and its President, Norihisa Onozawa, (collectively, defendants) without prejudice. We affirm.

We discern these facts from the record. In May 2015, plaintiff was extended an offer of employment by defendants as the Director of Human Resources, beginning June 1, 2015. The May 8, 2015 offer letter specified "a condition of employment" was plaintiff's "agree[ment] to sign the [c]ompany's standard form of 'Proprietary Information and Inventions [PII] Agreement'" attached to the offer letter to "safeguard" defendants' "proprietary and confidential information . . . ." In accepting the position, plaintiff signed the offer letter on May 19, 2015, stating he "accept[ed] th[e] offer of employment and the terms described" therein. On June 8, 2015, plaintiff also signed the six-page PII agreement, which included an arbitration clause beginning at the top of page five.

The arbitration clause was the same typeface and font size as the rest of the PII agreement, and was labeled "Arbitration," which was underlined. In its entirety, the clause stated:

11.    Arbitration.

(a) The parties agree that all disputes, controversies, or claims, or any proceeding seeking to investigate such disputes, controversies or claims between them arising out of or relating to this Agreement, any other agreement relating hereto or otherwise arising out of or relating to the employment relationship of Employee with Employer or the termination of same, including, but not limited to, claims of discrimination, harassment and retaliation, shall be submitted to, and determined by, binding arbitration.  Such arbitration shall be conducted before a single arbitrator pursuant to the Employment Arbitration Rules and Mediation Procedures then in effect of the American Arbitration Association, except to the extent such rules are inconsistent with this Agreement.  Exclusive venue for such arbitration shall be in Berkeley Heights, New Jersey.  The prevailing party in any such arbitration shall be entitled to recover its reasonable attorneys' fees, costs, and expenses incurred in connection with the arbitration as determined by the arbitrator where such an award would be permitted under the law governing the claims involved.  Any award pursuant to such arbitration shall be final and binding upon the parties, and judgment on the award may be entered in any federal or state court having jurisdiction.  Furthermore, the agreement to arbitrate claims shall not prevent the parties from seeking a temporary restraining order or temporary or preliminary injunctive relief from a court of competent jurisdiction to protect its rights hereunder.

(b) By execution of this Agreement, each of the parties hereto acknowledges and agrees that such party has had an opportunity to consult with legal counsel and that such party knowingly and voluntarily waives any right to a trial by jury of any dispute pertaining to or

3

relating in any way to the subject of this Agreement, the provisions of any federal, state, or local law, regulation, or ordinance notwithstanding.

(c) Nothing contained in this Section 11 shall prevent a party from initiating a proceeding in the United States District Court for the District of New Jersey or, if such court lacks subject matter jurisdiction, the state courts of the State of New Jersey in Union County in order to seek or obtain specific performance of the provisions of this Agreement or other injunctive relief relating to the provisions contained in Sections 2, 3, 4, 5 or 6 of this Agreement. If a party seeks injunctive relief, such action shall not constitute a waiver of the provisions of this agreement to arbitrate, which shall continue to govern any and every dispute between the parties including, without limitation, the right of damages, permanent injunctive relief, and any other remedy at law or in equity.

Plaintiff served as the Director of Human Resources for almost four years. His employment ended on March 11, 2019, when he was terminated. In a letter accompanying the proposed termination agreement he received from defendants, plaintiff was "reminded" he had signed the PII agreement when his employment commenced. The PII agreement was attached to the letter. Plaintiff did not sign defendants' proposed termination agreement.

On September 25, 2020, plaintiff filed a two-count complaint against defendants, alleging "unlawful discrimination based on race, national origin[,] and/or ancestry" and "unlawful retaliation" in violation of the Law Against

4

Discrimination (LAD), N.J.S.A. 10:5-1 to -49. The complaint alleged that defendants favored "Japanese employees and employees with Japanese heritage," and that plaintiff, who was "of European and Turkish descent," was terminated because he was not Japanese and had complained about "discrimination against non-Japanese employees and the preferential treatment of Japanese nationals and employees with Japanese ancestry."

On November 5, 2020, over plaintiff's objection, defendants moved to compel arbitration and dismiss plaintiff's complaint pursuant to Rule 4:6-2(a). In support, defendants relied on the arbitration clause included in the PII agreement that plaintiff had executed when he commenced employment. Defendants also submitted "samplings of [three a]greements countersigned by [p]laintiff as [defendants'] Director of Human Resources" during the course of his employment, which agreements contained the same arbitration clause plaintiff had signed.

Following oral argument, in a January 15, 2021 order, Judge Thomas R. Vena granted defendants' motion, compelling arbitration and dismissing plaintiff's complaint without prejudice. In an oral opinion placed on the record, which was supplemented by a written statement of reasons accompanying the order, the judge rejected plaintiff's contentions that the arbitration clause was

hidden in a side agreement, lacked any waiver of statutory rights, and was inconsistent and fatally ambiguous. On the contrary, the judge found that the arbitration clause contained in the PII agreement was "unambiguous and clear" and plaintiff could not "defeat the well-accepted presumption that [he] knew and understood what was being signed."

In distinguishing the facts in <u>Kernahan v. Home Warranty Administrator of Florida, Inc.</u>, 236 N.J. 301, 308 (2019), where our Supreme Court found no "mutuality of assent" to enforce an arbitration provision in a consumer contract that it deemed "confusing, and contradictory – and, in part, misleading," Judge Vena explained that, here,

> the word "Arbitration" appears on a separate line at the top of the next to last page of the [PII] Agreement and the word itself is underlined, creating a distinction from the rest of the text. The arbitration provision discusses binding arbitration as the forum for any disputes arising out of [p]laintiff's employment or the termination thereof. Therefore, [<u>Kernahan</u>] is not controlling here as the facts are distinguishable from those at bar.

Further, the judge found that "the claims brought by [p]laintiff against [d]efendant [were] within the scope of the arbitration clause." The judge expounded:

> [T]he scope of the [arbitration] clause runs the gamut – any and all claims arising out of the Agreement and employment relationship are covered therein and

6

subject to binding arbitration. . . . [I]t cannot be required, either in law or practicality, that an arbitration agreement enumerate every conceivable statute under which a covered claim could arise. The terms of the Agreement are sufficient to apprise any signatory of the fact that they are waiving important and time-honored rights as part of a binding agreement of employment.

Additionally, in rejecting plaintiff's argument that the arbitration provision was deceptively hidden and "was merely a side agreement among numerous other agreements," the judge explained:

While the title of the Agreement appeared to [p]laintiff to relate to only a specific subset of potential claims arising from the employment arrangement, it does not make the language of the provision itself so []ambiguous as to warrant a finding by th[e c]ourt that [d]efendants engaged in some sort of fraud or misconduct – a finding that would be necessary here to void the terms agreed to by the parties.

In this ensuing appeal, defendants raise the following points for our consideration:

POINT I: THE COURT BELOW ERRED BY COMPELLING ARBITRATION IN THE ABSENCE OF CLEAR, UNMISTAKABLE, AND UNAMBIGUOUS MANIFESTATION OF THE INTENT TO WAIVE STATUTORY RIGHTS.

A. The Title "Proprietary Information And Inventions Agreement" Is Fatally Ambiguous As Applied To Arbitration Of Statutory Retaliation And Race, Ancestry,

7

And National Origin Discrimination Claims.

B. The Arbitration Clause In Paragraphs 11(a) And 11(b) Of The [PII] Agreement Is Fatally Ambiguous As Applied To Arbitration Of Statutory Retaliation And Race, Ancestry, And National Origin Discrimination Claims.

POINT II: THE COURT BELOW ERRED BY ACTING AS THE TRIER OF FACT AND DECIDING THE ISSUE OF FRAUD WITHOUT PERMITTING ANY DISCOVERY.

We review de novo an order compelling arbitration. Skuse v. Pfizer, Inc., 244 N.J. 30, 46 (2020); see also Kernahan, 236 N.J. at 316 ("Whether a contractual arbitration provision is enforceable is a question of law, and we need not defer to the interpretative analysis of the trial . . . court[] unless we find it persuasive."). When reviewing such orders, we recognize arbitration is a "favored means of dispute resolution," Hojnowski v. Vans Skate Park, 187 N.J. 323, 342 (2006), and "are mindful of the strong preference to enforce arbitration agreements, both at the state and federal level." Hirsch v. Amper Fin. Servs., LLC, 215 N.J. 174, 186 (2013); see also Flanzman v. Jenny Craig, Inc., 244 N.J. 119, 133 (2020) (recognizing federal and state policy favoring arbitration).

In determining whether a valid agreement to arbitrate exists, we apply "state contract-law principles." Hojnowski, 187 N.J. at 342; see also Kernahan,

236 N.J. at 317-18.  Indeed, we "cannot subject an arbitration agreement to more burdensome requirements than those governing the formation of other contracts."  Leodori v. Cigna Corp., 175 N.J. 293, 302 (2003).  Under those principles, "[a]n arbitration agreement is valid only if the parties intended to arbitrate because parties are not required 'to arbitrate when they have not agreed to do so.'"  Kernahan, 236 N.J. at 317 (quoting Volt Info. Scis., Inc. v. Bd. of Trs. of Leland Stanford Junior Univ., 489 U.S. 468, 478 (1989).  Thus, our first inquiry is whether the parties actually and knowingly agreed to arbitrate their dispute.  Ibid.; see also Atalese v. U.S. Legal Servs. Grp., L.P., 219 N.J. 430, 442 (2014)).

That inquiry begins with the language of the arbitration clause itself.  To reflect mutual assent to arbitrate, the terms must be "sufficiently clear to place [an individual] on notice that he or she is waiving a constitutional or statutory right . . . ."  Atalese, 219 N.J. at 443.  "[A]lthough a waiver-of-rights provision need not 'list every imaginable statute by name to effectuate a knowing and voluntary waiver of rights,' employees should at least know that they have 'agree[d] to arbitrate all statutory claims arising out of the employment relationship or its termination."  Id. at 447 (second alteration in original)

(quoting Garfinkel v. Morristown Obstetrics & Gynecology Assocs., 168 N.J. 124, 135 (2001)).

"No particular form of words is necessary to accomplish a clear and unambiguous waiver of rights." Id. at 444; see also Flanzman, 244 N.J. at 137. Stated differently, "[n]o magical language is required to accomplish a waiver of rights in an arbitration agreement." Morgan v. Sanford Brown Inst., 225 N.J. 289, 309 (2016). If "at least in some general and sufficiently broad way" the language of the clause conveys that arbitration is a waiver of the right to bring suit in a judicial forum, the clause will be enforced. Atalese, 219 N.J. at 447. See Arafa v. Health Express Corp., 243 N.J 147, 172 (2020) (finding jury trial waiver "was knowing and voluntary in light of the . . . broad agreement to resolve 'all disputes' between the parties through binding arbitration"); Martindale v. Sandvik, Inc., 173 N.J. 76, 81-82 (2002) (upholding arbitration clause stating that "all disputes relating to [the party's] employment . . . shall be decided by an arbitrator" and that party "waiv[ed] [her] right to a jury trial").

In the employment setting in particular, an arbitration "provision must reflect that an employee has agreed clearly and unambiguously to arbitrate the disputed claim. Generally, we determine a written agreement's validity by considering the intentions of the parties as reflected in the four corners of the

written instrument." Leodori, 175 N.J. at 302. Employers and employees "may agree to arbitrate their disputes by referring generally to an arbitration policy contained in a separate writing, provided that the policy itself clearly reflects the employee's knowing and voluntary waiver of rights." Id. at 308.

"[T]o enforce a waiver-of-rights provision[,] . . . the [c]ourt requires some concrete manifestation of the employee's intent as reflected in the text of the agreement itself." Id. at 300 (quoting Garfinkel, 168 N.J. at 135). "Although not strictly required, a party's signature to an agreement is the customary and perhaps surest indication of assent." Id. at 306-07.

> [A]s a general rule, one who does not choose to read a contract before signing it cannot later relieve himself of its burdens. The onus [is] on plaintiff to obtain a copy of the contract in a timely manner to ascertain what rights it waived by beginning the arbitration process.
>
> [Skuse, 244 N.J. at 54 (internal quotations omitted) (quoting Riverside Chiropractic Grp. v. Mercury Ins. Co., 404 N.J. Super. 228, 238 (App. Div. 2008)).]

Applying these principles to the arbitration clause at issue here, we conclude that the arbitration clause clearly and unambiguously signaled to plaintiff he was waiving his right to pursue his discrimination claims in court and his execution of the agreement demonstrated his assent to the terms. The clause is clearly labeled "Arbitration" and printed in the same font size as the

11

rest of the agreement. Although the arbitration clause is contained within the PII Agreement, the language leaves no room for confusion regarding the requirement to arbitrate any "claims . . . arising out of or relating to the employment relationship of [e]mployee with [e]mployer or the termination of [the] same . . . ." Thus, we discern nothing about the mode of presentation or the placement of the provision that would support a conclusion that the clause was presented unfairly or with a design to conceal, deceive, or de-emphasize its importance.

Encompassed within the claims subject to "binding arbitration[,]" the clause specifically references "all disputes, controversies, or claims . . . including, but not limited to, claims of discrimination . . . and retaliation . . . ." The clause further specifies that execution of the agreement signifies "that such party knowingly and voluntarily waives any right to a trial by jury of any dispute pertaining to or relating in any way to the subject of this Agreement." Although the latter provision appears in subsection (b) and the former in subsection (a), there is no conflict or confusion between the subsections. Both provisions clearly specify that the terms pertain to "this Agreement."

In sum, because the arbitration clause is clear and unambiguous, devoid of conflicting provisions, and contains a definitive and valid waiver of the right

to a jury trial for statutory claims of "discrimination" and "retaliation" as alleged in plaintiff's complaint, it is enforceable. Cf. Rockel v. Cherry Hill Dodge, 368 N.J. Super. 577, 580-83 (App. Div. 2004) (finding an arbitration provision unenforceable because of "the uncertain content of the parties' agreement to arbitrate, the contracts' conflicting descriptions of the manner and procedure which would govern the arbitration proceedings, the absence of a definitive waiver of plaintiff's statutory claims, and the obscure appearance and location of the arbitration provisions").

On appeal, plaintiff renews the arguments rejected by Judge Vena. Specifically, plaintiff asserts the clause is fatally ambiguous, unenforceable, and "deceptively[] . . . buried" in the PII agreement, which contains a deceptive title. Plaintiff argues the clause "lacks a waiver notice," and "does not manifest an intent to arbitrate statutory claims." Applying a de novo standard of review, we reject plaintiff's contentions and affirm for the persuasive reasons articulated by Judge Vena in his oral and written statement of reasons. Additionally, we have considered plaintiff's remaining contention regarding his entitlement to "discovery limited to the question of fraud in the formation of the arbitration agreement" and reject it without further discussion in a written opinion. R. 2:11-3(e)(1)(E). See N.J.S.A. 2A:23B-7 (permitting the court to "proceed summarily

to decide the issue" on a party's application to compel arbitration); see also Gras v. Assocs. First Cap. Corp., 346 N.J. Super. 42, 56 (App. Div. 2001) (noting that there was "no . . . obligation" for the defendant to alert the plaintiff to the arbitration provision "where the provision is not hidden" and "[f]ailing to read a contract does not excuse performance unless fraud or misconduct by the other party prevented one from reading." (quoting Young v. Prudential Ins. Co. of Am., Inc., 297 N.J. Super. 605, 619 (App. Div. 1997))).

Affirmed.

I hereby certify that the foregoing is a true copy of the original on file in my office.

CLERK OF THE APPELLATE DIVISION

A-1410-20