**NOT FOR PUBLICATION WITHOUT THE
APPROVAL OF THE APPELLATE DIVISION**

This opinion shall not "constitute precedent or be binding upon any court." Although it is posted on the internet, this opinion is binding only on the parties in the case and its use in other cases is limited. <u>R.</u> 1:36-3.

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO. A-1981-24

MILAGROS CINTRON,

    Plaintiff-Respondent,

v.

BRINK'S INCORPORATED,
LISA JOHNSON, and LISA
DUFFY,

    Defendants-Appellants,

and

CHRIS GHIRTSOS,

    Defendant.

_____

        Argued September 16, 2025 – Decided January 26, 2026

        Before Judges Currier, Smith, and Jablonski.

        On appeal from the Superior Court of New Jersey, Law Division, Essex County, Docket No. L-7421-24.

        Michael J. Nacchio argued the cause for appellants (Ogletree, Deakins, Nash, Smoak & Stewart, PC,

attorneys; Thomas J. Rattay, Jocelyn A. Merced and Erin N. Donegan, on the briefs).

Thomas A. McKinney argued the cause for respondent (Castronovo & McKinney, LLC, attorneys; Thomas A. McKinney, of counsel and on the brief; Anais V. Paccione, on the brief).

PER CURIAM

Defendant Brink's Incorporated (Brink's) appeals the trial court's order granting plaintiff Milagros Cintron's motion for reconsideration and denying Brink's motion to compel arbitration. After reviewing the record and applicable legal principles, we reverse the trial court's decision to void the Mutual Arbitration Agreement (the Agreement). Furthermore, because plaintiff's argument regarding whether her claim is barred from arbitration under the Ending Forced Arbitration of Sexual Assault and Harassment Act of 2021, 9 U.S.C. §§ 401-02 (EFAA) raises an issue of significant public interest, we remand for the trial court to determine the applicability of that statute to plaintiff's claims.

I.

We glean the following facts from plaintiff's complaint and the record before us. Plaintiff began her employment with Brink's in 1997 as a currency

processor in its Newark office. In May 2022, plaintiff transferred to Brink's Maywood location as a balance processor. Plaintiff is an at-will employee.

## A.

Twenty-two years after she began her employment, plaintiff was presented with, and electronically signed, the Agreement with Brink's. The Agreement was updated in March 2022. Plaintiff electronically signed that document as well.

The Agreement provided, in pertinent part:

> Both you and Brink's agree that you and Brink's must submit all legally cognizable, employment-related claims between you and Brink's to binding arbitration, except as provided [later in the document] . . . . You and Brink's voluntarily waive all rights to trial in court before a judge or jury on all claims covered by this Agreement.

Under the Agreement, claims subject to arbitration were broad in scope and specifically included "claims involving harassment, discrimination, or retaliation of [any kind]." The only exceptions were claims for state insurance benefits, claims for which the Agreement would be invalid under federal or state law not preempted by federal law, and actions to enforce the Agreement, compel arbitration, or enforce or vacate an arbitrator's award.

The Agreement included a specific "opt-out" provision. If plaintiff wished to be excused from arbitration, she was required to follow separate instructions under a section labeled "OPTION TO OPT[-]OUT OF AGREEMENT." Under that provision, plaintiff had thirty days from the execution of the Agreement to "request an opt-out form from the Brink's recruiter you dealt with in connection with [her] offer of employment or from the Human Resources Director or Human Resources [HR] Manager assigned to your Branch or Department."

If an employee did not request the form from the HR department or failed to complete it and mail it back to the specified address,, the employee was bound to the terms of the Agreement.

B.

In December 2022, plaintiff became aware her coworkers and supervisors made derogatory comments about her in a group chat from which she was excluded. Participants in this group chat included defendant Chris Ghirtsos, plaintiff's direct manager, her route supervisor, James Reilly, and crew chief Tiffany Phillips. Only Ghirtsos is named in the present suit as a defendant. Plaintiff, who describes herself as a "Puerto Rican woman with dark skin," asserted that messages exchanged within the group chat referred to

A-1981-24

her and other coworkers, including African American and female employees, using atrocious, explicit, derogatory racist and gender-based sexist language including "n[***]er", "c[**]t", "monkey" and "b[***]h." Plaintiff specifically alleges that Ghirtsos referred to her using explicitly sexist terminology.

A participant in the group chat reported the offensive messages. Plaintiff contends defendants Lisa Duffy, Brink's HR Manager, and Lisa Johnson, Brink's HR Director, failed to address the reports or to discipline any involved personnel.

Plaintiff filed a two-count complaint alleging Brink's subjected her to a hostile work environment based on race and gender and violated the New Jersey Law Against Discrimination, N.J.S.A. 10:5-1 to -50. In the first count, plaintiff asserts that her coworkers' gender- and race-specific messages created a hostile work environment which altered the conditions of her employment and caused her emotional distress and other damages. The second count alleges that Ghirtsos, Duffy, and Johnson aided and abetted Brink's to create the hostile workplace atmosphere in violation of N.J.S.A. 10:5-12(e).

## C.

Brink's moved to dismiss the complaint and to compel arbitration. Plaintiff did not oppose the motion. Consequently, the trial court dismissed

A-1981-24

the complaint without prejudice and compelled plaintiff to arbitrate her claim. In response, plaintiff moved for reconsideration, arguing she inadvertently failed to oppose the motion.

The trial court reconsidered its decision and denied Brink's' motion to dismiss and to compel arbitration. The court held the Agreement was unenforceable under contract law principles because it lacked consideration. The court also concluded plaintiff was unaware she was signing an arbitration agreement and did not know of her option to opt-out of her arbitration obligation.

Brink's appealed.

Before us, Brink's contends the trial court's decision violates established precedent favoring enforcement of arbitration agreements and claims the Agreement was valid and enforceable. Conversely, plaintiff asserts the trial court properly reconsidered and vacated the previous order to compel arbitration and correctly found the Agreement unenforceable because it lacked mutual assent. Additionally, and for the first time on appeal, plaintiff alternatively argues that notwithstanding the validity of the Agreement, plaintiff's claims are required to be resolved in court, rather than in arbitration, under the EFAA.

6

A-1981-24

## II.

In assessing a trial judge's decision to grant a motion for reconsideration, we consider whether the trial court misapplied its discretion. See JPC Merger Sub LLC v. Tricon Enters., Inc., 474 N.J. Super. 145, 160 (App. Div. 2022). "Where the order sought to be reconsidered is interlocutory, . . . R[ule] 4:42-2 governs the motion." Ibid. Under Rule 4:42-2, "interlocutory orders 'shall be subject to revision at any time before the entry of final judgment in the sound discretion of the court in the interest of justice.'" Lawson v. Dewar, 468 N.J. Super. 128, 134 (App. Div. 2021) (quoting R. 4:42-2). We review questions of law de novo and "accord no 'special deference' to the 'trial court's interpretation of the law and the legal consequences that flow from established facts.'" Jeter v. Sam's Club, 250 N.J. 240, 251 (2022) (quoting Cherokee LCP Land, LLC v. City of Linden Plan. Bd., 234 N.J. 403, 414-15 (2018)).

In this case, the trial court granted plaintiff's reconsideration motion for procedural reasons and denied Brink's' motion to dismiss on substantive grounds. Because the court's decision was based on strict contract principles, specifically that plaintiff did not receive sufficient consideration when she signed the Agreement and the Agreement was not the product of mutual assent, a legal question is before us which is subject to our review de novo. After

7

reviewing the arguments and the controlling legal principles, we conclude the trial court was mistaken when it decided the Agreement was void.

As she did before the trial court, plaintiff argues before us that she had no recollection of signing the Agreement with Brink's and was never informed by Brink's' personnel about either the Agreement's existence or of any of its implications. Plaintiff asserts she was not required to sign the Agreement as a condition of her employment and the Agreement was not explained to her by either management or HR. Plaintiff also stated that completion of assigned HR tasks, typically administered through an electronic platform, was always characterized as mandatory, with failure to comply resulting in potential disciplinary action. According to plaintiff, the cumulative effect of these factors renders the Agreement procedurally unconscionable. We disagree.

Arbitration agreements are subject to customary contract law principles. Atalese v. U.S. Legal Services Group, L.P., 219 N.J. 430, 442 (2014). "A valid and enforceable agreement requires (1) consideration; (2) a meeting of the minds based on a common understanding of the contract terms; and (3) unambiguous assent." Lahoud v. Anthony & Sylvan Corp., 481 N.J. Super. 29, 41 (App. Div. 2025) (citing Atalese, 219 N.J. at 442-43). Consequently, to be

A-1981-24

enforceable, the terms of an arbitration agreement must be clear and any legal rights being waived must be identified. Atalese, 219 N.J. at 442-43.

"No particular form of words is necessary to accomplish a clear and unambiguous waiver of rights." Id. at 444. If "at least some general and sufficiently broad way" the language of the clause conveys arbitration is a waiver of the right to bring suit in a judicial forum, the clause will be enforced. Id. at 447. No "magical language" is required. Morgan v. Sanford Brown Inst., 225 N.J. 289, 309 (2016). On de novo review and guided by these principles, we conclude the Agreement is both valid and enforceable.

First, the Agreement is supported by adequate consideration. It is axiomatic that promises will be enforced if those representations are supported by consideration. Martindale v. Sandvik, Inc., 173 N.J. 76, 87 (2002). "The essential requirement of consideration is a bargained-for exchange of promises or performance that may consist of an act, a forbearance, or the creation, modification, or destruction of a legal relation." Ibid. (quoting Shebar v. Sanyo Bus. Sys. Corp., 111 N.J. 276, 289 (1988)). Courts have routinely and consistently held the "creation of an employment relationship, which is achieved when the employer agrees to consider and/or agrees to hire the applicant for employment, is sufficient consideration to uphold an arbitration

agreement contained in an employment application." Id. at 88. Plaintiff's continued employment with Brink's after she signed the Agreement represents sufficient consideration to bind the parties contractually. Ibid. ("[I]n New Jersey, continued employment has been found to constitute sufficient consideration to support certain employment-related agreements."). Here, although plaintiff was already employed, her continued employment as an at-will employee, was continued by Brink's. The parties' mutual promises to each other represents valid consideration.

Second, the acceptance of the Agreement represents a meeting of the minds. It is undisputed plaintiff signed and returned the Agreement. Plaintiff argues that she did not possess "informed consent" before she executed the Agreement. This argument is unavailing.

In the employment setting, an arbitration provision "must reflect that an employee has agreed clearly and unambiguously to arbitrate the disputed claim. Generally, we determine a written agreement's validity by considering the intentions of the parties as reflected in the four corners of the written instrument." Leodori v. CIGNA Corp., 175 N.J. 293, 302 (2003) "[T]o enforce a waiver-of-rights provision[,] . . . the Court requires some concrete manifestation of the employee's intent as reflected in the text of the agreement

itself." Id. at 300 (quoting Garfinkel v. Morristown Obstetrics & Gynecology Assocs., 168 N.J. 124, 135 (2001)). "Although not strictly required, a party's signature to an agreement is the customary and perhaps surest indication of assent." Id. at 306-07. Generally "'one who does not choose to read a contract before signing it cannot later relieve [themselves] of [their] burdens.' The onus [i]s on [the] plaintiff to obtain a copy of the contract in a timely manner to ascertain what rights [they] waived by beginning the arbitration process." Skuse v. Pfizer, Inc., 244 N.J. 30, 54 (2020) (quoting Riverside Chiropractic Grp. v. Mercury Ins. Co., 404 N.J. Super. 228, 238 (App. Div. 2008)).

Third, unmistakable assent is demonstrated by "some concrete manifestation of the employee's intent as reflected in the text of the agreement itself." Garfinkel, 168 N.J. at 135. Plaintiff advances the argument that the Agreement is void "in several respects" because of language that is "especially confusing to a layperson." We disagree.

The language used, with either its bold-faced or capitalized emphasis, is clear and direct. Declarative sentences free from legal jargon and complicated phrasing outline the rights and obligations of each party concisely and transparently. Likewise, the instructions for opting out of the agreement are presented clearly in a separate paragraph, with specific steps that minimize and

11

eliminate any confusion regarding how to exercise this option. In sum, the Agreement is both valid and enforceable.

However, this conclusion does not end our analysis.

III.

Despite the validity of the Agreement, plaintiff's claims may still be able to proceed in a court rather than in arbitration under the EFAA. Plaintiff raises this issue for the first time in opposition to defendant's appeal.

The EFAA amends the Federal Arbitration Act, 9 U.S.C.A. §§ 1-16 and, in relevant part, states:

> [A]t the election of the person alleging conduct constituting a sexual harassment dispute . . ., no predispute arbitration agreement . . . shall be valid or enforceable with respect to a case which is filed under Federal . . . or State law and relates to the sexual assault dispute . . . .
>
> [9 U.S.C. § 402(a).]

Plaintiff argues that since this matter centers on sexual and racial harassment claims, her "entire case is subject to the EFAA." Defendants maintain that since plaintiff did not raise the EFAA issue before the trial court, she cannot raise it for the first time on appeal. Brink's also advances a substantively nuanced argument that plaintiff's controversy is not precluded

12

from arbitration under the EFAA because her case involves claims of sexual discrimination rather than sexual assault or harassment.

Generally, we will not "consider issues, even constitutional ones, which were not raised [before the trial court]." State v. Galicia, 210 N.J. 364, 383 (2012). "For sound jurisprudential reasons, with few exceptions, '[we] decline to consider questions or issues not properly presented [at their inception] when an opportunity for such a presentation is available.'" State v. Witt, 223 N.J. 409, 419 (2015) (quoting State v. Robinson, 200 N.J. 1, 20 (2009)) (internal quotation marks omitted). This rule, however, is not absolute and we will consider unpreserved issues if those questions "concern matters of great public interest." Nieder v. Royal Indem. Ins. Co., 62 N.J. 229, 234 (1973) (quoting Reynolds Offset Co., Inc. v. Summer, 58 N.J. Super. 542, 548 (App. Div. 1959)).

Since plaintiff did not invoke the protection of the EFAA before the trial court, we are unable to address it in substantial detail here since there is no record for us to review. However, this controversy reflects a matter of great public significance meriting our, albeit limited, review.

Recently, we observed:

> The EFAA represents the "first major amendment in the history of the FAA," a law passed nearly a century

A-1981-24

ago to encourage courts to enforce arbitration agreements and their terms. Olivieri v. Stifel, Nicolaus & Co., Inc., 112 F.4th 74, 84 (2d Cir. 2024) (citing David Horton, The Limits of the Ending Forced Arbitration of Sexual Assault and Sexual Harassment Act, 132 Yale L.J. Forum 1, 1 (2022)). The EFAA, whose passage is widely attributed to the #MeToo movement, reflects Congress's concern that "compelled arbitration of sexual harassment claims can perpetuate unacceptable behavior and minimize its consequences by diverting such claims from public court proceedings into a private forum." Liu v. Miniso Depot CA, Inc., 105 Cal. App. 5th 791, 326 Cal. Rptr. 3d, 286, 288 (Cal. Ct. App. 2024).

[McDermott v. Guaranteed Rate, Inc., ___ N.J. Super. ___, ___ (App. Div. 2025) (slip op. at 29).]

We deem this issue to be of such "great public interest" to warrant deviation from our general principle of not considering an issue for the first time on appeal. Here, the gender-specific epithets directed at plaintiff may serve as the predicate for her sexual harassment claim. Therefore, the EFAA, by its strict terms, might preempt defendant's contention that the Agreement requires arbitration of this claim. However, because plaintiff did not seek to invoke the protections of the EFAA during the motion hearing, the trial court was not given the opportunity to interpret or to evaluate the application of the EFAA to plaintiff's complaint. Therefore, we remand for the court to do so.

14

Reversed and remanded for the trial court to consider the applicability of the EFAA in accordance with this opinion.  We do not retain jurisdiction.

I hereby certify that the foregoing is
a true copy of the original on file in
my office.

M.C. Harley

Clerk of the Appellate Division

A-1981-24