**NOT FOR PUBLICATION WITHOUT THE
APPROVAL OF THE APPELLATE DIVISION**

This opinion shall not "constitute precedent or be binding upon any court." Although it is posted on the internet, this opinion is binding only on the parties in the case and its use in other cases is limited. R. 1:36-3.

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO. A-3594-23

JIA WANG and
XIAODONG JIANG,

      Plaintiffs-Respondents,

v.

COA 99 HUDSON, LLC,
CHINA OVERSEAS AMERICA,
INC., and THE MARKETING
DIRECTORS, INC.,

      Defendants-Appellants.

_____

Argued February 12, 2025 – Decided March 18, 2025

Before Judges Sumners and Bergman.

On appeal from the Superior Court of New Jersey, Law Division, Hudson County, Docket No. L-2296-23.

Patricia A. Lee argued the cause for appellants (Connell Foley LLP, attorneys; Leo J. Hurley, Jr., Patricia A. Lee, and Alexa C. Salcito, of counsel and on the briefs).

Keith N. Biebelberg argued the cause for respondents (Biebelberg & Martin LLC, attorneys; Keith N. Biebelberg, of counsel and on the brief).

PER CURIAM

In this residential real estate sale, defendants appeal, on leave granted, from an order denying their motion requesting: (1) summary disposition on the enforceability of the parties' arbitration agreement; (2) staying all claims pending completion of the American Arbitration Association (AAA) proceeding pursuant to Rule 4:6-2(e), or, in the alternative; (3) to dismiss any remaining claims of plaintiffs' pursuant Rule 4:6-2(e). After our de novo review, we conclude the trial court engaged in an appropriate factual and legal analysis supporting its denial of defendants' motion and invalidating the arbitration clause in their agreement and, therefore, we affirm.

I.

In December 2017, the parties executed a Subscription and Purchase Agreement (SPA) for plaintiffs to purchase condominium unit 1601 (the unit) from defendants located at 99 Hudson Street in Jersey City. Pursuant to the SPA, plaintiffs paid a deposit of $86,700 representing ten percent of the purchase price to be held in escrow. Upon signing of the SPA, plaintiffs received a digital copy of the public offering statement (POS).

The SPA provided that the contract "will be legally binding" after the review period unless an attorney reviews and disapproves. Plaintiffs retained

2

counsel to represent them concerning the SPA, POS and other issues surrounding their purchase of the unit.

The SPA included Section 13, titled "ARBITRATION" (Arbitration Provision), stating:

> ARBITRATION: Buyer, on behalf of Buyer and all permanent residents of the Unit, including minor children, hereby agree that any and all disputes with Seller, Seller's parent company or their subsidiaries or affiliates arising out of the Unit, this Agreement, the Unit warranty, any other agreements, communications or dealings involving Buyer, or the construction or condition of the Unit including, but not limited to, disputes concerning breach of contract, express and implied warranties, personal injuries and/or illness, mold-related claims, representations and/or omissions by Seller, on-site and off-site conditions and all other torts and statutory causes of action ("Claims") shall be resolved by binding arbitration during the warranty period in accordance with the rules and procedures of Construction Arbitration Services, Inc. [(CAS)] or its successor or an equivalent organization selected by Seller. If CAS is unable to arbitrate a particular claim, then that claim shall be resolved by binding arbitration pursuant to the Construction Rules of Arbitration of the [AAA] or its successor or an equivalent organization selected by Seller. In addition, Buyer agrees that Buyer may not initiate any arbitration proceeding for any Claim(s) unless and until Buyer has first given Seller specific written notice of each claim (at 1500 Broadway, Suite 2301, New York, New York, 10036, Attn: Warranty Dispute Resolution) and given Seller a reasonable opportunity after such notice to cure any default, including the repair of the Unit, in accordance with the Unit warranty. The provisions of this section

3

> shall be governed by the provisions of the Federal Arbitration Act [(FAA)], 9 U.S.C. [§§ 1, et seq.] and shall survive settlement.

On November 15, 2021, defendants provided a letter to plaintiffs' counsel reminding him that a certificate of occupancy was issued for the unit and requested confirmation of plaintiffs' intention to close. Defendants' letter further stated "[i]f we do not receive notice of your client's intent to proceed to closing by December 15, 2021, seller will utilize the arbitration provision within the [SPA] in order to collect liquidated damages."

On December 9, plaintiff Jai Wang contacted defendants by e-mail informing them they were no longer represented by counsel and requested that defendants contact her directly regarding the closing of the unit. Defendants revised the November 15 letter re-addressing and emailing it to Wang that same day.

For approximately eleven months from December 2021 to November 2022, Wang and defendants exchanged numerous communications concerning closing on the unit. Throughout this period, Wang expressed her intent to proceed with the closing but indicated difficulties with finding replacement counsel and inquired about the "deadline" to close. Defendants informed her the deadline was "as soon as possible as this unit has been able to close for some

4

time." Defendants repeatedly informed plaintiffs that their failure to close may result in them filing for arbitration.

Plaintiffs refused to close on the unit, claiming it was substantially smaller than represented and advertised among other reasons. Based on plaintiffs' refusal to close, on March 7, 2023, defendants filed a demand for arbitration with AAA requesting a declaratory judgment as well as a claim for breach of contract. Defendants demanded relief pursuant to the liquidated damages clause in the SPA that entitled defendants to retain ten percent or the $86,700 held in escrow due to plaintiffs' breach.

On March 27, plaintiffs filed an answer and counterclaim. The counterclaim asserted breach of contract, breach of implied duty of good faith and fair dealing, negligent/fraudulent misrepresentations/omissions, and sought dismissal of the arbitration, a refund of plaintiffs' deposit, as well as an order awarding costs and attorney's fees. The counterclaim also alleged that defendants "materially breached the parties' contract by failing to disclose the nature and extent of various substantial defects with the construction," including "fail[ing] to disclose water damage to [the unit] in a timely manner and by submitting an inconsistent incident report and estimate of repairs," . . . "defects with the windows and the truthfulness of the representations as to the dimensions

5

of the units." Plaintiffs also averred that "the building is presently the subject of multiple multi-plaintiff and/or class action lawsuits which could have a significant adverse financial impact on the [plaintiffs] by way of future assessments or special assessments distributed among the unit owners." The answer also responded to paragraph 23 of defendants' demand asserting "the meaning and significance of the arbitration provision was not explained to plaintiffs by counsel, nor were they advised that they had a right to reject or negotiate against the arbitration agreement."

As the parties continued to exchange communications concerning arbitration, on June 12, AAA sent a letter to all parties stating "in the absence of an agreement by the parties or a court order staying this matter, the AAA will proceed with the administration of the arbitration."

On June 27, plaintiffs filed a complaint and order to show cause (OTSC) in the Law Division requesting an order dismissing or staying the AAA arbitration. The complaint sought "Declaratory Judgment That the Arbitration Be Dismissed," as well as rescission of the SPA. The complaint also alleged claims under the Consumer Fraud Act (CFA), N.J.S.A. 56:8-1 to -224, the New Jersey Planned Real Estate Development Full Disclosure Act, N.J.S.A. 45:22A-

6

21 to -56 (PREDFDA) and for breach of contract, breach of implied duty of good faith and negligent/fraudulent misrepresentation/omission as to COA 99.

After the court denied the OTSC and a subsequent motion for reconsideration, plaintiffs appealed. We granted defendants' motion to dismiss the appeal, determining the order under appeal was interlocutory because the trial court failed to render a substantive decision on the enforceability of the arbitration clause at issue. Wang v. COA 99 Hudson LLC, No. A-0688-23 (App. Div. Jan. 11, 2024) (slip op. at 1-2).

After our dismissal, on February 6, 2024, defendants moved before the trial court for summary disposition on the enforceability of the arbitration agreement and to stay all claims pending completion of the AAA proceeding, or, in the alternative to dismiss plaintiffs' complaint pursuant to Rules 4:6-2(a) and 4:6-2(e). After oral argument, the trial court denied defendants' motion, finding the arbitration clause in the SPA was invalid pursuant to our Court's holding in Atalese[1] because "the agreement is deficient as it fails to include language that plaintiffs are waiving their statutory right to seek relief in court." The court rejected defendants' contention that state law was preempted by the FAA, 9 U.S.C. §§ 1-16, and that Atalese did not apply because plaintiffs were

---

[1] Atalese v. U.S. Legal Services Group, L.P, 219 N.J. 430 (2014).

"sophisticated parties" who were represented by counsel. The court found "[t]here is no exception recognized by law for 'sophisticated parties' in consumer contracts."

The trial court distinguished defendants' reliance on County of v. Horizon Healthcare Services, Inc., 474 N.J. Super 498 (App. Div. 2023) finding it involved a commercial contract and "[t]his matter does not involve a commercial contract." Finally, the court rejected defendants' contention that plaintiffs had waived their right to object to the arbitration by filing an answer and counterclaim and by participating in the arbitration proceeding. On or about June 12, the court entered an order denying defendants' motion in its entirety, which effectively invalidated the arbitration clause in the SPA.

On appeal, defendants reprise their arguments made to the trial court asserting:

> POINT I
>
> THE ARBITRATION CLAUSE CONTAINED WITHIN THE SUBSCRIPTION AND PURCHASE AGREEMENT IS VALID AND ENFORCEABLE UNDER THE FEDERAL ARBITRATION ACT.
>
> POINT II
>
> EVEN IF THE FEDERAL ARBITRATION ACT DOES NOT APPLY, THE DECISION IN ATALESE IS NOT A BRIGHT LINE RULE AND IS NOT

APPLICABLE TO THIS COMMERCIAL CONTRACT AS THERE WAS MUTUAL ASSENT.

  A. Plaintiffs' Intent to Purchase and Signature Manifest Mutual Assent.

  B. Plaintiffs Had Ample Time to Examine the Agreement with the Counsel of their Choosing During the Statutorily-Required Attorney Review Provided for in the SPA.

  C. Plaintiffs' Duty to Read the Incorporated Public Offering Statement Is Further Evidence of Their Intent to Be Bound to Arbitrate.

  D. The Agreement is Clear, Unambiguous and Conspicuous.

  E. Plaintiffs Never Asserted They Did Not Understand the Arbitration Clause.

## II.

We review a trial court's order granting or denying a motion to compel arbitration de novo because the validity of an arbitration agreement presents a question of law. Skuse v. Pfizer, Inc., 244 N.J. 30, 46 (2020). We owe no special deference to the trial court's interpretation of an arbitration provision, which we view "with fresh eyes." Morgan v. Sanford Brown Inst., 225 N.J. 289, 303 (2016).

"An agreement to arbitrate, like any other contract, must be the product of mutual assent, as determined under customary principles of contract law."

A-3594-23

<u>Atalese</u>, 219 N.J. at 442. A waiver of the right to sue in court "must reflect [an agreement to] clearly and unambiguously[] arbitrate the disputed claim." <u>Leodori v. CIGNA Corp.</u>, 175 N.J. 293, 302, <u>cert. denied</u>, 540 U.S. 938 (2003). Such a waiver "results only from an explicit, affirmative agreement that unmistakably reflects[] assent." <u>Id.</u> at 303; <u>see also</u> <u>Atalese</u>, 219 N.J. at 442-43. "[T]o be enforceable, the terms of an arbitration agreement must be clear, 'and the contract needs to explain that the agreement waives a person's right to have their claim tried in a judicial forum.'" <u>Ogunyemi v. Garden State Med. Ctr.</u>, 478 N.J. Super. 310, 315 (App. Div. 2024) (quoting <u>Antonucci v. Curvature Newco, Inc.</u>, 470 N.J. Super. 553, 561 (2022)).

In <u>Atalese</u>, the Court stated:

> No particular form of words is necessary to accomplish a clear and unambiguous waiver of rights. It is worth remembering, however, that every "consumer contract" in New Jersey must "be written in a simple, clear, understandable and easily readable way." N.J.S.A. 56:12-2. Arbitration clauses—and other contractual clauses—will pass muster when phrased in plain language that is understandable to the reasonable consumer.
>
> [219 N.J. at 444.]
>
> . . . .
>
> [N]o prescribed set of words must be included in an arbitration clause to accomplish a waiver of rights.

10                                                    A-3594-23

> Whatever words compose an arbitration agreement, they must be clear and unambiguous that a consumer is choosing to arbitrate disputes rather than have them resolved in a court of law. In this way, the agreement will assure reasonable notice to the consumer.
>
> [Id. at 447.]

The FAA and the New Jersey Arbitration Act, N.J.S.A. 2A:23B-1 to -32, are premised on policies favoring arbitration as a means of resolving disputes. Atalese, 219 N.J. at 440 (2014). "Arbitration's favored status does not mean that every arbitration clause, however phrased, will be enforceable." Id. at 441.

> Although it is firmly established that the FAA preempts state laws that invalidate arbitration agreements, the FAA specifically permits states to regulate contracts, including contracts containing arbitration agreements under general contract principles; therefore, an arbitration clause may be invalidated "upon such grounds as exist at law or in equity for the revocation of any contract."
>
> [Martindale v. Sandvik, Inc., 173 N.J. 76 (2002) (quoting 9 U.S.C. § 2).]

"[S]tate contract-law principles generally govern a determination whether a valid agreement to arbitrate exists." Waskevich v. Herold Law, P.A., 431 N.J. Super. 293, 298 (App. Div. 2013) (quoting Hojnowski v. Vans Skate Park, 187 N.J. 323, 342 (2006)). In other words, "New Jersey may 'regulate agreements, including those that relate to arbitration, by applying its contract-law principles

that are relevant in a given case.'" Skuse v. Pfizer, Inc., 244 N.J. 30, 47 (2020) (quoting Leodori, 175 N.J. at 302).

## III.

We are not persuaded by defendants' FAA preemption argument. We conclude the argument is without sufficient merit to warrant discussion in a written opinion. R. 2:11-3(e)(1)(E). We add the following comments. Atalese and its progeny has firmly established state law is not pre-empted by the FAA when determining the validity of arbitration agreements under general contract principles as here. We therefore find no error in the trial court's determination that the FAA does not preempt state law related to the enforceability of the disputed arbitration clause in the SPA.

We now turn to defendants' arguments under Point II of their appeal surrounding mutual assent. Defendants assert that the trial court erred in denying their motion requesting the court to enforce Section 13 of the SPA and compel arbitration. Defendants assert in applying Atalese, the trial court

> did not assess, or ascribe the necessary weight to several factors unique to this commercial contract; specifically: the sophistication of the parties, the incorporation of the AAA Rules and inclusion of the POS in the SPA; the parties' bargaining power; that the parties understood and consulted with [c]ounsel regarding the agreement's terms; and that the plain meaning of the term "binding arbitration" can be

12

gleaned from the entire contract or else the "common ordinary meaning" that would be ascribed by N.J.S.A. 56:12-10(a)(5).

In County of Passaic, we determined:

> Atalese, as well as other decisions from our Supreme Court, focus on the unequal relationship between the contracting parties or the adhesional nature of the contract when holding that an arbitration agreement could not be enforced without an express waiver of the right to seek relief in a court of law. As the United States Court of Appeals for the Third Circuit has recognized, our Supreme Court has adopted the stricter approach found in Atalese "only in the context of employment and consumer contracts."
>
> [474 N.J. Super at 503 (quoting In re Remicade Antitrust Litigation, 938 F.3d 515, 525 (3d Cir. 2019)).]

Ultimately, we concluded:

> Although our Supreme Court has not expressly declared it, and although we too have not said as much in any published opinion, we are satisfied, as the court of appeals recognized in Remicade, 938 F.3d at 526 —and as we now so hold— that an express waiver of the right to seek relief in a court of law to the degree required by Atalese is unnecessary when parties to a commercial contract are sophisticated and possess comparatively equal bargaining power.
>
> [Id. at 504.]

"A consumer cannot be required to arbitrate when it cannot fairly be ascertained from the contract's language that [they] knowingly assented to the provision's terms or knew that arbitration was the exclusive forum for dispute resolution." Kernahan v. Home Warranty Adm'r of Florida, Inc., 236 N.J. 301, 322 (2019).

We conclude the arbitration clause in the SPA does not meet the requirements of Atalese because it failed to include clear language that plaintiffs were waiving their statutory right to seek relief in court. There is no language whatsoever in Section 13's Arbitration clause which states or even suggests that a dispute concerning the SPA was required to be submitted to arbitration versus resolution in a judicial forum. We conclude the absence of this language creates an ambiguity related to the parties' mutuality of assent. A plain meaning reading of the language in the arbitration clause does not demonstrate plaintiff had fair notice that by signing the SPA, she was knowingly assenting to arbitration as an exclusive remedy.

In addition, we disagree with defendants' categorizing the transaction as commercial. We determine the SPA relates to a residential condominium unit and is a "consumer contract" as defined under the New Jersey "Plain Language Law", N.J.S.A. 56:12-1 to -13. As such, the SPA must meet the requirements

14

of that statute. Specifically, under the statute, a consumer contract is defined as a written agreement in which an individual "purchases real or personal property." N.J.S.A. 56:12-1(e). We determine that plaintiffs were clearly individuals purchasing real property and are therefore consumers under the Act. The SPA was in their names individually. We agree with the trial court's rejection of the holding in County of Passaic as applied to the facts herein because the transaction "does not involve a commercial contract." In County of Passaic, we reduced the standard surrounding the enforceability of arbitration agreements in a commercial setting, not for consumer real estate contracts like the one before us.

We now address defendants' argument that because plaintiffs were "sophisticated" parties who were represented by an attorney during the negotiation of the SPA that the arbitration clause should have been enforced. We are not persuaded. Nothing in Atalese nor any case we are aware of stands for the proposition that consumers become sophisticated buyers and stand on equal footing with an LLC in the business of selling residential real estate merely because counsel represents the buyer. This proposition would obviate the protections under Atalese related to the enforceability of arbitration agreements in almost every instance where an attorney represents a consumer. We decline

15

to modify or extend the holding of <u>Atalese</u> in the manner suggested by defendants.

We are also not persuaded by defendants' arguments that plaintiff's assented to arbitration because of the several times the word arbitration was mentioned throughout the transactional documents and because "[t]he Foreword page [of the POS] notably contains a notice effectively explaining that arbitration involves a waiver of a jury trial".

We determine the SPA and other documents utilizing the term "arbitration" is insufficient because clear and unambiguous language is required to show a consumer assents to arbitrate disputes rather than submitting the disputes to a court of law under <u>Atalese</u>. Since the agreement failed to satisfy this requirement, the inclusion of the term "arbitration" in the SPA, no matter how many times, was insufficient to compel arbitration.

We now turn to defendants' next argument claiming the language contained in the POS provides sufficient disclosure to plaintiffs that they are waiving their right to a court determination of disputes and agreeing to arbitration. Although not specifically cited in their briefing, we assume defendants are relying on language contained in an introductory section of the POS entitled "SPECIAL RISK." This section, in pertinent part states: "THE

16

PURCHASER SHOULD UNDERSTAND THAT BY AGREEING TO ARBITRATE ALL DISPUTES WITH THE SPONSOR, . . . HE OR SHE IS GIVING UP HIS OR HER RIGHT TO A TRIAL IN COURT, EITHER WITH OR WITHOUT A JURY[.]"

Here, no dispute exists that plaintiffs signed the SPA but did not sign the POS. Section 14A of the SPA acknowledges plaintiffs' receipt of the POS prior to its execution. Section 14B states that buyers agree that the SPA is "subject to the terms and provisions of the Governing Documents." Section 2 of the SPA define "Governing Documents" as the Master Deed, the Certificate of Incorporation, the Bylaws and the Rules and Regulations.

We agree with plaintiffs that the waiver terms in the "SPECIAL RISK" portion of the POS were not part of the governing documents for which plaintiffs agreed to be bound by under the SPA. Again, we note that plaintiffs did not sign the POS nor does the record provide any evidence that plaintiffs specifically agreed to abide by its terms. We therefore conclude defendants' argument that plaintiffs were notified and waived their right to have disputes decided by a court rather than through arbitration based on the language in the "SPECIAL RISK" section of the POS lacks merit.

17 

We now turn to defendants' argument that defendants waived their right to object to arbitration. In <u>Wein v. Morris</u>, the Court set forth factors to be considered in determining whether a party has waived their right to object to arbitration when it stated:

> [T]he court should consider the totality of circumstances to evaluate whether a party has waived the right to object to arbitration after the matter has been ordered to arbitration and arbitration is held.
>
> . . . .
>
> Some of the factors to be considered in determining the waiver issue are whether the party sought to enjoin arbitration or sought interlocutory review, whether the party challenged the jurisdiction of the arbitrator in the arbitration proceeding, and whether the party included a claim or cross-claim in the arbitration proceeding that was fully adjudicated.
>
> [194 N.J. 364, 383 (2008).]

Here, there was no court order requiring arbitration nor was any substantive proceeding held in the arbitration. We determine plaintiffs did not avail themselves of the arbitration proceedings simply by responding to defendants' arbitration demand. We also find support for plaintiffs' position at paragraph 23 of their response which suggests they challenged the validity of the arbitration. Plaintiffs' response stated, "the meaning and significance of the arbitration provision was not explained to [plaintiffs] by counsel, nor were they

18

advised that they had a right to reject or negotiate against the arbitration requirement." The record also reflects that plaintiffs' counsel filed repeated objections to the arbitration proceeding during this process.

We determine the trial court's finding that plaintiffs "never intended to submit themselves to the jurisdiction of the AAA arbitration" was supported by the record. We conclude the trial court's order denying defendants' request to compel arbitration based on wavier was appropriate under the totality of the factual circumstances.

To the extent we have not addressed any of defendants' remaining arguments, we conclude those arguments are without sufficient merit to warrant discussion in a written opinion. R. 2:11-3(e)(1)(E).

Affirmed.

I hereby certify that the foregoing is a true copy of the original on file in my office.

M.C. Hanley

Clerk of the Appellate Division

19

A-3594-23